## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and CSC
BRANDS LP,

               Plaintiffs,

      v.

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,

             Defendants.

Case No:
 2:25-cv-13213

## COMPLAINT
## DEMAND FOR JURY TRIAL

Plaintiffs The Campbell's Company and CSC Brands LP (together, "Campbell's") bring this action to stop Defendants Shelby Nicole Campbell and her political campaign committee, Campbell for Congress (collectively with Shelby Nicole Campbell, "Defendants") from using the famous trade dress of Campbell's famous soup can ("CAMPBELL'S SOUP CAN") in connection with Defendants' campaign activities. Campbell's asked Defendants to stop using its iconic design to promote Shelby Nicole Campbell's candidacy, but Defendants refused. Left with no other option, Campbell's files this Complaint for trademark infringement, false designation of origin, and false endorsement, and alleges as follows:

## **INTRODUCTION**

1.      For more than 150 years, Campbell's has brought people of all persuasions together around the dinner table, connecting people through the food they love. Campbell's protects its independence and status as a uniting force, using its food to connect people and their communities.

2.      The CAMPBELL'S SOUP CAN is one of the most iconic and prized articles of consumer trade dress and pop culture in the world.  Its distinctive and protected two-tone design, circle medallion, and labeling and ingredient orientation have been synonymous with Campbell's soup products for over 125 years:

 

3.      Campbell's has long protected its famous and beloved

CAMPBELL'S SOUP CAN through registration of numerous federal and international trade dress and trademark protections, including U.S. Registration No. 48664, U.S. Registration No. 1544679, U.S. Registration No. 2066673, U.S. Registration No. 7,758,888, and U.S. Registration No. 7,758,889 (collectively, the "Campbell's Federal Marks"). The first of these registrations was issued in 1905–decades before the advent of the Lanham Act–and the most recent in April 2025.

4.      Recently, Campbell's discovered that Defendants are copying all core design and trade dress elements of the CAMPBELL'S SOUP CAN to launch and promote their campaign:



5.      Defendants knew they were copying Campbell's famous CAMPBELL'S SOUP CAN marks and trade dress and trading on a false association with Campbell's. Indeed, their entire campaign seeks to associate Ms.

Campbell with Campbell's: their campaign slogan is "soup4change", their website address is www.soup4change.com, their X (formerly Twitter) account is "@soup4change," their TikTok and Instagram account is "@atasteofsoup," and they use hashtags such as "vote4soup" or "soup4change." They also use an actual CAMPBELL'S SOUP CAN in their campaign materials, asking supporters to "help [her] out" as "[w]e know you all love the Campbell's soup cans."



6.      Defendants distribute stickers with their campaign logo, and have placed them next to an actual CAMPBELL'S SOUP CAN—reinforcing the false association with Campbell's:



7.    Consumers are confused. Social media users and consumers have repeatedly asked whether Campbell's "endorses" Defendants' campaign and tagged Campbell's corporate social media accounts demanding clarification.



8.    Defendants' actions are not innocent parody but are designed to capitalize on Campbell's iconic brand and associate one of the country's most famous and enduring brands with her political campaign.

9.    Campbell's, however, does not endorse Defendants' political campaign and, before filing this action, sent Defendants a cease-and-desist letter asking them to change their campaign logo.

10.   Defendants refused Campbell's request. Instead, Defendants posted both Campbell's letter and their response on social media and remarked that the dispute would "make [her] blow up and really win congress easily."



11.   Defendants also posted that Campbell's effort to protect its trademark and brand "didn't work then" and "won't work now."



12.   Defendants continue to willfully infringe the CAMPBELL'S SOUP CAN mark and trade dress, using the unauthorized association in their campaign materials.

13.     Campbell's accordingly brings this action for injunctive relief and other remedies to protect its famous intellectual property, prevent further consumer confusion, and stop Defendants' unlawful exploitation of the CAMPBELL'S SOUP CAN.

## PARTIES

14.     Plaintiff The Campbell's Company is a New Jersey corporation with its headquarters at 1 Campbell Place, Camden, New Jersey.

15.     Plaintiff CSC Brands LP is a Delaware limited partnership with its principal place of business at 1 Campbell Place, Camden, New Jersey. CSC Brands LP is an indirect wholly owned subsidiary of The Campbell's Company and is the owner of record for Campbell's trademark registrations, including the Campbell's Federal Marks.

16.     Upon information and belief, Defendant Shelby Nicole Campbell is a citizen and resident of the State of Michigan and is a candidate for the United States House of Representatives in Michigan's 13th Congressional District.

17.     Upon information and belief, Defendant Campbell for Congress is organized and existing under the laws of the State of Michigan, with its principal place of business at 8100 E. Jefferson Ave, Detroit, Michigan 48214. On information and belief, Defendant Campbell for Congress is in the business of, *inter alia*, raising funds for the congressional campaign of Shelby Nicole

Campbell.

## JURISDICTION AND VENUE

18.     This action arises and is brought under the Trademark Act, known as the Lanham Act, 15 U.S.C. §§ 1050, *et seq*.

19.     This Court has subject matter jurisdiction over Campbell's federal trademark claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

20.     The Court has personal jurisdiction over Defendants because, on information and belief, they are citizens of the State of Michigan and are present and do business in the State of Michigan.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in this Judicial District and because a substantial part of the events giving rise to Campbell's claims occurred in this District.

## FACTS

### A.   *Campbell's* Soup and its Trade Dress

22.     Campbell's was founded in Camden, New Jersey, in 1869 and is still headquartered there. It employs more than 13,000 as an enterprise, including 1,300 people at its headquarters alone. Originally formed as a partnership between Joseph Campbell, a wholesale fruit and vegetable vendor, and Abraham Anderson, a commercial canner and packer, the company eventually grew into what is today

The Campbell's Company.

23.     Campbell's has been selling canned soup for more than 125 years. In 1897, Dr. John T. Dorrance invented the process of condensing soup and packaging it into smaller cans – an innovation that led to rapid growth and widespread popularity.

24.     In 1898, Campbell's introduced the first version of its signature CAMPBELL'S SOUP CAN, featuring contrasting color bands and a circular design element in the center of the can:



25.     In 1900, *Campbell's* soup won a medal for product excellence at the Paris Exposition. Campbell's placed the medallion design in the center of its CAMPBELL'S SOUP CAN, a version of which remains today:



26.     Since 1898, the CAMPBELL'S SOUP CAN has remained largely unchanged. It continues to feature the core design elements of contrasting top and bottom panels, a circular design in between the two panels, the Campbell's house mark in the top third of the can, a flavor name in the lower third of the can, and a "soup" notation at the bottom of the can.

 

27.     Campbell's has invested billions of dollars and more than 125 years of work in producing high-quality, delicious, and affordable soups and building the reputation of the *Campbell's* brand and CAMPBELL'S SOUP CAN as an item that families, friends, and neighbors can enjoy together.

28.     For many decades, Campbell's has been one of the most famous and beloved consumer food brands in the United States and is routinely rated among America's most trusted brands. *Campbell's* is the #1 trusted soup brand in the

United States and has a nearly 100% awareness score among consumers.

29.     The CAMPBELL'S SOUP CAN is so famous and iconic that it has inspired some of America's most significant works of art. Andy Warhol's iconic image of Campbell's classic red and white can—Campbell's Soup Cans— premiered in Los Angeles in 1962:



30.     The fame of the CAMPBELL'S SOUP CAN has only grown further over the ensuing decades. Today, *Campbell's* remains a famous, household-name brand and a fixture in grocery stores and kitchens across America.

31.     To ensure its ongoing success and fame, Campbell's invests significant resources to advertise and promote the *Campbell's* brand. Campbell's extensive advertising and marketing of the *Campbell's* brand and the CAMPBELL'S SOUP CAN has reached consumers in every single state in the United States for many decades, as well as many consumers beyond the United

States.

32.    The strength and nationwide fame of the CAMPBELL'S SOUP CAN is reflected in its commercial success.

**B.    Campbell's Longstanding Trademark and Trade Dress Rights**

33.    For more than a century, Campbell's has diligently developed and protected its famous trademarks and trade dress. It owns longstanding common law rights in the trade dress of the CAMPBELL'S SOUP CAN dating back to 1898, well before the modern-day Lanham Act or its predecessor, the Trademark Act of 1905, were passed into law.

34.    Campbell's also owns multiple trademark registrations covering the elements of the CAMPBELL'S SOUP CAN, including the following:

<u>Campbell's Federal Registrations</u>

| U.S. Reg. No. 48664 (Registered 1906) |  |
|---|---|
| U.S. Reg. No. 1544679 (Registered 1989) |  |



| | |
|---|---|
| U.S. Reg. No. 2066673<br>(Registered 1997) | |
| U.S. Reg. No. 7758888<br>(Registered 2025) | |
| U.S. Reg. No. 7758889<br>(Registered 2025) | |

### C.     Campbell's Trademark Enforcement Efforts

35.     As the owner of a famous brand, Campbell's is vigilant in enforcing

its trademark rights against third parties who would infringe or dilute the

CAMPBELL'S SOUP CAN and related marks. These efforts have been successful

over many years and the CAMPBELL'S SOUP CAN remains one of the most

distinctive and iconic food brands in the world.

36.     For instance, just last year, Campbell's sued Jane Foodie LLC for

selling packaged soups in cans mimicking the CAMPBELL'S SOUP CAN after

Jane Foodie refused to resolve the dispute amicably. Campbell's obtained a favorable judgment in the United States District Court for the District of New Jersey, which entered an order finding that Jane Foodie's can design diluted Campbell's marks and trade dress and enjoining Jane Foodie from using the design. *The Campbell's Co. v. Jane Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8. In that case, Campbell's sought and obtained only injunctive relief and no monetary damages.

37.     Campbell's has also addressed misuse of its trade dress by political candidates, who like Defendants share Campbell's great name, including Chris Campbell who ran for and became the County Commissioner of Highland County (District 5) in Florida and J. Ryan Campbell who ran for the Olathe School Board in Olathe, Kansas. Unlike Defendants, who have rejected Campbell's efforts to protect its property rights, both of these candidates agreed to cease using Campbell's trade dress after Campbell's objected.

**D.     Defendants' Misappropriation of the Campbell's Trade Dress**

38.     Recently, Campbell's discovered that Defendants are using, and are intending to continue to use, a design that is confusingly similar to and a colorable imitation of the famous CAMPBELL'S SOUP CAN in connection with their current campaign for the U.S. House of Representatives and to fundraise for that campaign.

39.     Defendants' infringing design imitates multiple elements of the

CAMPBELL'S SOUP CAN, including top and bottom panels in red and white

colors, a central circular medallion, matching placement of the name Campbell in

lightly colored, italicized letters and smaller, capitalized letters directly below the

name in the upper band, matching placement of the letters in the lower band—the

font, placement, and visual effect of which is virtually identical to the

CAMPBELL'S SOUP CAN.

40.     A side-by-side comparison of Defendants' campaign logo and the

CAMPBELL'S SOUP CAN mark confirms that Defendants' design is an unlawful

imitation of, and is confusingly similar to, the CAMPBELL'S SOUP CAN:

| **Defendants' Campaign Logo** | **CAMPBELL'S SOUP CAN** |
|---|---|
|  | |

41.     Indeed, Defendants appear to have copied the "Campbell's" logo

with a slight modification to delete the apostrophe and the "s." This much is clear from the remaining typeface that follows the second "l" in Defendants' campaign logo.

42.     Defendants prominently feature this infringing design across their social media platforms. Their X/Twitter account uses this infringing design as the background and their TikTok account has "pinned" the post with the infringing design so that it appears on the top, front page of their account at all times:

 

43.     Defendants' Facebook page also displayed the design until recently:



44.     On information and belief, Defendants also distribute stickers and other merchandise bearing the infringing design in commerce to actual and prospective campaign contributors and to the general public throughout the United States. On information and belief, Defendants intend to continue to do so during the campaign and for fundraising for their campaign.

45.     Both their website and their social media accounts offer these stickers:




46.     Defendants' design infringes the famous CAMPBELL'S SOUP CAN trade dress and trademarks by causing consumers to associate the CAMPBELL'S SOUP CAN with Defendants. Defendants do not deny the similarity. They do just the opposite: they use this false association to garner public attention and promote their candidacy.

47.     For instance, Defendants have displayed their stickers next to an actual CAMPBELL's SOUP CAN to emphasize the connection:



48.     Defendants also solicit support for their campaign by invoking
Campbell's, telling potential supporters to "help [her] out" as "[w]e know you all
love the Campbell's soup cans":



49.     Further, Defendants use the term "soup" in their campaign's website,
social media account names, and hashtags to falsely suggest that their campaign is
affiliated with or endorsed by Campbell's. Defendants' campaign slogan is
"soup4change," their official website is www.soup4change.com, their X (formerly
Twitter) account is "@soup4change," their TikTok and Instagram accounts are
"@atasteofsoup," and they use hashtags such as "vote4soup" or "soup4change."

50.     Given Defendants' efforts to promote the similarity of their
campaign logo to Campbell's to falsely associate their political campaign with
Campbell's, Defendants' infringement is knowing and willful and is intended to
capitalize on the goodwill and fame of the CAMPBELL'S SOUP CAN.

**E.    Evidence of Confusion Resulting from Defendants' Unauthorized
        Use of Campbell's Trade Dress**

51.     Campbell's has never authorized Defendants to use the
CAMPBELL'S SOUP CAN mark and trade dress for their campaign. And

Defendants' infringing use has already caused, and is likely to continue to cause, consumer confusion, with members of the public believing that Campbell's has in some way sponsored, endorsed, authorized or is otherwise associated with Defendants, their campaign, and their fundraising efforts.

52.     Multiple consumers have commented on Defendants' X (formerly Twitter), Instagram, TikTok, and Facebook pages asking whether Campbell's "endorses" Defendants' campaign—sometimes by tagging Campbell's corporate social media accounts. For example, one user tagged Campbell's corporate account and asked, "@Campbell's Soup do you endorse this [candidate]":



53.     Members of the public have also inquired of Campbell's directly about whether Campbell's endorses Defendants or is associated with Defendants. For instance, Campbell's has received emails, including one below, asking whether

Campbell's "endorse[s]" Defendants and attaching a picture of Defendants' campaign logo:



54.     These real-world examples have actually confused consumers into associating Campbell's with Defendants and their campaign.

**F.     Campbell's Attempts to Resolve this Dispute**

55.     Connecting people through food has always been the core purpose of Campbell's. But Campbell's cannot permit Defendants' effort to falsely associate with its famous trade dress to promote their political campaign.

56.     Before retaining outside counsel or filing this complaint, Campbell's sent Defendants a cease-and-desist letter on September 2, 2025, requesting them to stop using Campbell's intellectual property and discard all materials featuring their infringing design.

57.     Defendants responded by posting Campbell's letter on social media, vowing not to "back down" and that Campbell's "could be on the team together" with Defendants.

58.     Defendants further claimed that the Campbell's letter would "make [her] blow up and really win congress easily," presumably referring to the publicity they are receiving due to Campbell's enforcement efforts:



59.     Defendants have made clear that they have no intention of changing their campaign logo, posting that Campbell's enforcement efforts "didn't work then" and "won't work now."



60.     Accordingly, Campbell's brings this action to protect the

CAMPBELL'S SOUP CAN and prevent further consumer confusion and irreparable harm.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Infringement of Federally Registered Trademark—15 U.S.C. § 1114(1)(a))

61.     Campbell's incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as if fully set forth herein.

62.     This claim is for the infringement of trademarks registered in the United States Patent and Trademark Office, pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a), as amended.

63.     Campbell's owns all right, title, and interest in the trade dress of the CAMPBELL'S SOUP CAN, which it has continuously used in commerce since at least 1898.

64.     Campbell's owns all right, title, and interest in the Campbell's Federal Marks covering the elements of the CAMPBELL'S SOUP CAN.

65.     While not necessary for a claim under Section 1114(1)(a), the CAMPBELL'S SOUP CAN is famous and has been recognized as such. *See The Campbell's Co. v. Jane Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8. As a result of Campbell's extensive marketing efforts and the overwhelming commercial success and cultural ubiquity of the *Campbell's* brand, the CAMPBELL'S SOUP CAN is widely recognized by the general consuming

public across the United States and internationally as a designation of the source of Campbell's products.

66.    Defendants' campaign logo is confusingly similar to, and a colorable imitation of, the federally registered CAMPBELL'S SOUP CAN trade dress, and infringes the Campbell's trademark registrations, including, among others, the Campbell's Federal Marks set forth in Paragraph 34 of this Complaint.

67.    Through the conduct alleged above, Defendants' unauthorized use of Campbell's trade dress in commerce is likely to cause confusion and mistake, and to deceive the public as to the approval, sponsorship, affiliation, license, source or origin of Defendants, their campaign, and fundraising for the campaign.

68.    Defendants' unauthorized use of the CAMPBELL'S SOUP CAN trade dress constitutes "use in commerce" and "services" within the meaning of 15 U.S.C. § 1114(1)(a). *See United We Stand Am., Inc. v. United We Stand, Am. New York, Inc*., 128 F.3d 86, 92–93 (2d Cir.1997) ("It appears that 'use in commerce' denotes Congress's authority under the Commerce Clause rather than an intent to limit the Act's application to profitmaking activity."); *Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588, 592 (D. Md. 2014) ("[T]he 'in commerce' requirement of this section of the Lanham Act is a jurisdictional requirement rather than a commercial activity requirement.").

69.    Defendants' use of Campbell's brand to associate with Campbell's is

not protected by the First Amendment. *See Hershey Co.*, 33 F. Supp. 3d at 595 (holding that "[the First Amendment] protection does not apply when the trademark is used to associate a political candidate with a popular consumer brand"); *United We Stand Am. Inc.*, 128 F.3d at 93 (explaining that use of the plaintiff's mark as a means of association is not protected by the First Amendment).

70.     Defendants knew of the CAMPBELL'S SOUP CAN and its popularity in advance of their decision to adopt the trade dress and chose to capitalize on the goodwill and reputation of CAMPBELL'S SOUP CAN.

71.     On information and belief, Defendants' acts of infringement have been done willfully and deliberately, and Defendants have benefited or will benefit from their acts of trademark infringement.

72.     Defendants' willful and deliberate acts described above have caused injury and damages to Campbell's and have caused irreparable injury to Campbell's goodwill and reputation.

73.     Campbell's has no adequate remedy at law for Defendants' misconduct. Unless Defendants are enjoined from continuing their acts of infringement, Campbell's will continue to suffer injury from the infringement of its marks.

74.     Defendants' intentional and willful misconduct renders this an

"exceptional case" under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### (False Designation of Origin and False Endorsement—15 U.S.C. § 1125(a))

75.     Campbell's incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as if fully set forth herein.

76.     This claim is for false designation of origin and false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as amended.

77.     Campbell's owns all right, title, and interest in the trade dress of the CAMPBELL'S SOUP CAN, which it has continuously used in commerce since at least 1898.

78.     Campbell's owns all right, title, and interest in the Campbell's Federal Marks covering the elements of the CAMPBELL'S SOUP CAN.

79.     While not necessary for a claim under Section 1125(a), the CAMPBELL'S SOUP CAN is famous and has been recognized as such. *See The Campbell's Co. v. Jane Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8. The CAMPBELL'S SOUP CAN is famous. As a result of Campbell's extensive marketing efforts and the overwhelming commercial success and cultural ubiquity of the *Campbell's* brand, the CAMPBELL'S SOUP CAN is widely recognized by the general consuming public across the United States and internationally as a designation of the source of Campbell's products.

80.     Defendants' campaign logo is confusingly similar to, and a colorable

imitation of, the federally registered CAMPBELL'S SOUP CAN trade dress, and infringes the Campbell's trademark registrations, including, among others, the Campbell's Federal Marks set forth in Paragraph 34 of this Complaint.

81.    Through the conduct alleged above, Defendants' unauthorized use of Campbell's trade dress in commerce is likely to cause confusion and mistake and to deceive the public as to the approval, sponsorship, affiliation, license, source or origin of Defendants, their campaign, and fundraising for the campaign.

82.    Defendants' unauthorized use of the CAMPBELL'S SOUP CAN trade dress constitutes "use in commerce" and "services" within the meaning of 15 U.S.C. § 1125 (a). *See Democratic Party of NJ, Inc. v. Devine*, 2022 WL 4976616, at *2 (D.N.J. Oct. 4, 2022) ("The Lanham Act protects the unauthorized use of a mark in connection with the advertising of any goods or services if such use is likely to cause confusion. 15 U.S.C. § 1125(a). The term 'services' has been interpreted broadly to apply to non-commercial public and civic benefits, including political organizations engaged in certain activities analogous to those alleged here.").

83.    Defendants' use of Campbell's brand to associate with Campbell's is not protected by the First Amendment. *See Hershey Co*., 33 F. Supp. 3d at 595 (holding that "[the First Amendment] protection does not apply when the trademark is used to associate a political candidate with a popular consumer

brand"); *United We Stand Am., Inc.*, 128 F.3d at 93 (explaining that use of the plaintiff's mark as a means of association is not protected by the First Amendment).

84.     Defendants knew of the CAMPBELL'S SOUP CAN and its popularity in advance of their decision to adopt the trade dress and chose to capitalize on the goodwill and reputation of CAMPBELL'S SOUP CAN.

85.     On information and belief, Defendants' acts of false designation of origin and false endorsement have been done willfully and deliberately, and Defendants have benefited or will benefit from their acts of false designation of origin and false endorsement.

86.     Defendants' willful and deliberate acts described above have caused injury and damages to Campbell's and have caused irreparable injury to Campbell's goodwill and reputation.

87.     Campbell's has no adequate remedy at law for Defendants' misconduct. Unless Defendants are enjoined from continuing their acts of infringement, Campbell's will continue to suffer injury from the infringement of its marks.

88.     Defendants' intentional and willful misconduct renders this an "exceptional case" under 15 U.S.C. § 1117.

## **DEMAND FOR JURY TRIAL**

Campbell's respectfully demands a trial by jury on all triable issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Campbell's respectfully demands judgment against Defendants as follows:

A. Preliminarily and permanently enjoin Defendants:

    1. From using the CAMPBELL'S SOUP CAN mark or trade dress or any other mark or trade dress that is confusingly similar thereto; and

    2. From otherwise falsely suggesting that Campbell's has sponsored, endorsed, authorized or otherwise is affiliated or associated with Defendants, including by using the term "soup" in any campaign website, social media accounts, hashtags, or in any other manner in connection with Defendants' campaign that suggests an endorsement or affiliation by Campbell's.

B. Order Defendants to remove and cause to be removed all online images, videos, or content from their campaign website, social media accounts, hashtags or other online campaign platform featuring any logo design that uses the CAMPBELL'S SOUP CAN mark or trade dress or any other mark or trade dress that is confusingly similar thereto.

29

C. Order Defendants to remove and cause to be removed all online content from their campaign website, social media accounts, hashtags or online campaign platform suggesting that Campbell's has sponsored, endorsed, authorized or otherwise is affiliated or associated with Defendants, including those using the term "soup" or in any other manner in connection with Defendants' campaign that suggest an endorsement or affiliation by Campbell's.

D. Order Defendants to cease and cause to cease all sale, distribution, or dissemination of merchandise or other campaign materials, including stickers or other items, bearing any logo design that uses the CAMPBELL'S SOUP CAN mark or trade dress or any other mark or trade dress that is confusingly similar thereto.

E. Order Defendants to destroy and cause to be destroyed any remaining inventory of such merchandise or campaign materials.

F. Grant additional relief in accordance with 15 U.S.C. § 1117.

G. Award Plaintiffs such other and further relief as this Court deems equitable and proper.

Dated: October 10, 2025                           Respectfully submitted,


                                                  /s/ Leah R. Imbrogno
                                                  Leah R. Imbrogno (P79384)

FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: (313) 234-7100
LImbrogno@foley.com

Andrew Levine (*application for admission forthcoming*)
Lily (Haeun) Kim (*application for admission forthcoming*)
BRAUNHAGEY & BORDEN LLP
200 Madison Ave, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
levine@braunhagey.com
kim@braunhagey.com

*Attorneys for Plaintiffs The Campbell's Company and CSC Brands LP*