## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and CSC
BRANDS LP,

        Plaintiffs,

    v.

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,

        Defendants.

Case No: 2:25-cv-13213-JEL-DRG

Hon. Judith E. Levy

Mag. Judge David R. Grand

## PLAINTIFFS THE CAMPBELL'S COMPANY AND CSC BRANDS LP'S MOTION FOR PRELIMINARY INJUNCTION

### **IMMEDIATE CONSIDERATION REQUESTED**

Plaintiffs The Campbell's Company and CSC Brands LP (collectively, "Campbell's"), hereby respectfully move this Court, under Federal Rule of Civil Procedure 65(a), for an Order preliminarily enjoining Defendants Shelby Nicole Campbell ("Ms. Campbell") and Campbell for Congress (the "Entity Defendant" and, with Ms. Campbell, collectively "Defendants") from misusing Campbell's famous, federally registered trademark and trade dress and otherwise suggesting that Campbell's is associated with, affiliated with, or endorses Defendants. In further support of this Motion, Plaintiffs rely on the statements of fact and arguments of law set forth in the attached Brief in Support, the Federal Rules of

Civil Procedure, the local rules of the Eastern District of Michigan, and the pleadings and exhibits on file with the Court.

Pursuant to Local Rule 7.1, the undersigned certifies that Campbell's has had several exchanges with Ms. Campbell requesting concurrence in the relief sought. Ms. Campbell did not concur.

As of the date of this filing, no counsel has entered an appearance on behalf the Entity Defendant. Campbell's has been unable to otherwise ascertain whether the Entity Defendant has counsel. *See, e.g.*, *Detroit Battery Co. v. Walby*, No. 4:23-11178, 2023 WL 11985249, at *1 (E.D. Mich. Sept. 27, 2023) ("[I]t has been the law for the better part of two centuries ... that a corporation may appear in federal court only through licensed counsel[,]" and this "applies equally to all artificial entities[,]" including but not limited to "partnerships or associations[.]") (quoting *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993)). The Entity Defendant's concurrence was not received.

Plaintiffs request oral argument.

Dated: November 3, 2025                    Respectfully submitted,


                                          /s/ Leah R. Imbrogno
                                          Leah R. Imbrogno (P79384)
                                          FOLEY & LARDNER LLP
                                          500 Woodward Avenue, Suite 2700

Detroit, Michigan 48226
Telephone: (313) 234-7100
LImbrogno@foley.com

Andrew Levine
Lily (Haeun) Kim
BRAUNHAGEY & BORDEN LLP
200 Madison Ave, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
levine@braunhagey.com
kim@braunhagey.com

*Attorneys for Plaintiffs The*
*Campbell's Company and CSC*
*Brands LP*

4923-4597-4903.1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and CSC
BRANDS LP,

          Plaintiffs,

     v.

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,

          Defendants.

Case No: 2:25-cv-13213-JEL-DRG

Hon. Judith E. Levy

Mag. Judge David R. Grand

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## <u>STATEMENT OF ISSUE PRESENTED</u>

Whether the Court should enter a preliminary injunction enjoining Defendants from continuing to infringe on the CAMPBELL'S SOUP CAN mark or trade dress or any other mark or trade dress that is confusingly similar thereto, amongst additional related relief, where: (a) consumers are already actually confused regarding Defendants' use of the marks; (b) Plaintiffs have already suffered and will continue to suffer irreparable harm to their goodwill and reputation from consumers mistakenly believing Plaintiffs endorse or otherwise are associated with Defendants; and (c) an injunction would prevent Defendants from misusing the marks without inhibiting campaign activities?

Plaintiffs' answer: "Yes."

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

- *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530 (6th Cir. 2024)

- *Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588, 594 (D. Md. 2014)

4923-4597-4903.1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND.............................................................. 3

    A.    Campbell's and its Famous CAMPBELL'S SOUP CAN ................. 3

    B.    Campbell's Extensive Advertising And The Fame Of Its Soup Can... 4

    C.    Campbell's Vigilant Enforcement Of Its Trademark Rights .............. 5

    D.    Defendants' Unauthorized Use Of The CAMPBELL'S SOUP CAN . 6

    E.    Defendants' Infringement Has Caused Actual Confusion And Is Likely To Continue To Do So.............................................................. 9

    F.    Defendants Rebuffed Campbell's Attempts to Amicably Resolve This Matter and Continue Their Infringement Despite Notice and Suit...... 9

ARGUMENT .................................................................................... 10

I.    CAMPBELL'S IS ENTITLED TO INJUNCTIVE RELIEF ...................... 11

    A.    Campbell's Is Likely to Succeed on Its Lanham Act Claims ............ 11

        1.    Campbell's Owns Valid Trademark and Trade Dress............. 12

        2.    Defendants Used the Infringing Design in Commerce in Connection with Services ....................................................... 13

        3.    Defendants' Infringing Design Is Likely To Cause Confusion 14

            a.    Campbell's Asserted Marks are Undeniably Strong ..... 15

            b.    Defendants' Infringing Mark is Nearly Indistinguishable from Campbell's Soup Can Design............................... 16

            c.    Defendants Intentionally Infringe Campbell's Marks To Create A False Association in Voters' Minds ............... 17

            d.    The Public Is Actually Confused.................................. 18

            e.    The Remaining Factors Favor Campbell's.................... 19

4923-4597-4903.1

B.   The First Amendment Does Not Protect Defendants' Infringement . 20

II.   CAMPBELL'S WILL SUFFER IRREPARABLE HARM
ABSENT A PRELIMINARY INJUNCTION .............................................. 21

III.   A PRELIMINARY INJUNCTION WILL NOT HARM
OTHERS ................................................................................................... 22

IV.   THE PUBLIC INTEREST FAVORS PRELIMINARY
INJUNCTION ........................................................................................... 23

CONCLUSION .................................................................................................... 24

4923-4597-4903.1

# TABLE OF AUTHORITIES

## CASES                                                      PAGES(S)

*Audi AG v. D'Amato*,
469 F.3d 534 (6th Cir. 2006) ...................................................................17

*AWGI, LLC v. Atlas Trucking Company, LLC*,
998 F.3d 258 (6th Cir. 2021) .................................................................17

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) .................................................................11

*Bliss Collection, LLC v. Latham Companies, LLC*,
82 F.4th 499 (6th Cir. 2023) ..................................................................15

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
78 F.3d 1111 (6th Cir. 1996) ..................................................................12

*Colors+ v. Colors+ Counseling, LLC*,
782 F. Supp. 3d 579 (N.D. Ohio 2025) ..................................................18

*Daddy's Junky Music Stores*,
109 F.3d .................................................................................... 16, 18

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
604 F.2d 200 (2d Cir. 1979) ..................................................................14

*DayCab Co., Inc. v. Prairie Tech., LLC*,
67 F.4th 837 (6th Cir. 2023) .................................................................14

*Detroit Battery Co. v. Walby*,
No. 4:23-11178, 2023 WL 11985249 (E.D. Mich. Sept. 27, 2023) ........2

*Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.*,
2008 WL 5384077 (E.D. Mich. Dec. 23, 2008) ....................................23

*Hershey Co. v. Friends of Steve Hershey*,
33 F. Supp. 3d 588 (D. Md. 2014)................................................ passim

*Hydrojug, Inc. v. Five Below, Inc.*,
625 F. Supp. 3d 684 (N.D. Ohio 2022) .................................... 19, 23, 24

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023) ................................................................20

*Libertarian Nat'l Comm., Inc. v. Saliba*,
   116 F.4th 530 (6th Cir. 2024) ....................................... passim

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
   453 F.3d 377 (6th Cir. 2006) ...................................................23

*Lucky's Detroit, LLC v. Double L, Inc.*,
   533 F. App'x 553 (6th Cir. 2013) ..........................................21

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
   679 F.3d 410 (6th Cir. 2012) ....................................... 12, 15

*Moltan Co. v. Eagle-Picher Indus., Inc.*,
   55 F.3d 1171 (6th Cir. 1995) ..................................................23

*Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v.
Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ..................................................11

*PGP, LLC v. TPII, LLC*,
   734 F. App'x 330 (6th Cir. 2018) ................................ 12, 21

*Radiance Found., Inc. v. NAACP*,
   25 F. Supp. 3d 865 (E.D. Va. 2014) ......................................13

*Rhinehart v. Scutt*,
   509 F. App'x 510 (6th Cir. 2013) ..........................................22

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*,
   506 U.S. 194 (1993).................................................................2

*TracFone Wireless, Inc. v. Washington*,
   978 F. Supp. 2d 1225 (MD. Fla. 2013)..................................23

*United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*,
   128 F.3d 86 (2d Cir. 1997) ....................................................13

*Wynn Oil Co. v. Am. Way Serv. Corp.*,
   943 F.2d 595 (6th Cir. 1991) ..................................................15

4923-4597-4903.1

## STATUTES

15 U.S.C. § 1065 ...................................................................................................12

15 U.S.C. § 1115(b) .............................................................................................12

15 U.S.C. §§ 1057, 1065 .......................................................................................4

15 U.S.C. §§ 1114(1), 1125(a) ............................................................... 11, 12, 13

## RULES

Federal Rule of Civil Procedure 65(a) ...................................................................1

## OTHER AUTHORITIES

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 7:39 (5th ed.)...............19

4923-4597-4903.1

## **INTRODUCTION**

Plaintiffs The Campbell's Company and CSC Brands LP (together, "Campbell's") seek an urgent remedy: a preliminary injunction barring Defendants Shelby Nicole Campbell ("Ms. Campbell") and her political campaign committee, Campbell for Congress (collectively, "Defendants"), from continuing to misuse Campbell's famous, federally protected trademark and trade dress (the "CAMPBELL'S SOUP CAN") in connection with their political campaign and from taking actions to suggest that Campbell's is affiliated with, associated with, or endorses Defendants.

For over 150 years, Campbell's has brought people of all political persuasions together around the dining table, connecting them through the food they love.  The CAMPBELL'S SOUP CAN is one of the world's most iconic and immediately recognizable articles of consumer trade dress. The public has for many years inextricably linked that distinctive two-tone design, circle medallion, and labeling and ingredient orientation to Campbell's and its soup products.

 

Ms. Campbell, a political newcomer, seeks to leverage Campbell's brand

and distinctive trade dress to boost her profile by attaching herself to an established household brand immediately familiar to voters in her district. Defendants have deliberately misappropriated Campbell's famous marks to promote Ms. Campbell's bid for a seat in the U.S. House of Representatives. In particular, Defendants adopted a design that is extremely similar to and a clear imitation of the CAMPBELL'S SOUP CAN, and embossed their copycat design with the tagline "Soup for Change," to misrepresent to the public that Campbell's is affiliated with and endorses Ms. Campbell's political campaign. Neither is true.



Campbell's has repeatedly attempted to address Defendants' infringement without litigation. Defendants have refused to stop misusing an iconic American brand in a way that suggests affiliations and endorsements that do not exist. Campbell's is left with no alternative but to bring this Motion to protect the brand it has built over the past 125 years.

Campbell's easily satisfies each requirement for a preliminary injunction. Campbell's is likely to succeed on its Lanham Act claims because Defendants' design is confusingly similar to the CAMPBELL'S SOUP CAN. Indeed,

2

Defendants' design has already caused actual consumer confusion and will continue to do so unless enjoined. Moreover, Defendants' ongoing infringement irreparably harms Campbell's goodwill and reputation by misleading the public into believing that Campbell's has sponsored, endorsed, authorized, or is otherwise affiliated with Defendants.

The balance of equities and public interest also strongly favor Campbell's. An injunction would stop Defendants only from using the infringing design and misleading the public. Relief would have no effect on other campaign activities. Similarly, issuing relief will further the public interest in preventing the misuse of trademarks and trade dress to confuse and/or mislead the public—particularly in connection with a political campaign.

Ms. Campbell has every right to run for office, and to use her own name in doing so. She may not, however, misuse an iconic American brand like the CAMPBELL'S SOUP CAN to bolster her campaign by falsely implying some affiliation with or endorsement from a trusted American company like Campbell's.

## FACTUAL BACKGROUND

### A. Campbell's and its Famous CAMPBELL'S SOUP CAN

Campbell's was founded in 1869 in Camden, New Jersey. Since 1895, Campbell's has sold canned soups bearing the famous CAMPBELL'S SOUP CAN trademark and trade dress. That trade dress comprises, among other elements, a

3

two-tone split label (commonly although not exclusively red-and-white), the circular medallion centered between the panels, the scripted "Campbell's" word mark in the upper portion, smaller block text near the word mark, a flavor designation in the lower portion, and the "soup" notation at the bottom. (*See, supra*, p. 1; Declaration of Benjamin Crook ("Crook Decl.") ¶ 3; Exs. 1, 2.)

Campbell's has secured extensive trademark and trade dress protections in the United States and abroad. (*Id*. ¶ 4; Ex. 3.) Plaintiff CSC Brands LP, an indirect, wholly owned subsidiary of Plaintiff The Campbell's Company, owns numerous registrations covering the elements of the CAMPBELL'S SOUP CAN, including the incontestable U.S. Registration No. 2066673, registered in 1997:



(*See id*. and Ex. 3 (Campbell's relevant trademark registrations).) Together, the registration certificates issued by the United States Patent & Trademark Office ("USPTO") on these designs serve as evidence of the validity of registered marks, and of Campbell's ownership of these marks and exclusive rights to use them in commerce in the United States. 15 U.S.C. §§ 1057, 1065.

**B.     Campbell's Extensive Advertising And The Fame Of Its Soup Can**

Over the past century, Campbell's has invested heavily to build the

CAMPBELL'S SOUP CAN into one of America's most recognizable marks. It has invested substantial sums in advertising on TV, print, and online and social media, with its products sold nationwide and worldwide. (*Id*. ¶¶ 6, 7; Ex. 5.)

Campbell's significant, sustained investments in its brand and advertising have helped make CAMPBELL'S SOUP CAN one of America's most trusted and widely recognized brands. *Campbell's* is the #1 trusted soup brand in the United States and enjoys a nearly 100% awareness score among consumers. (*Id*. ¶ 8; Exs. 6, 21, 22.) Consumers all over the country—including in Michigan—instantly associate the CAMPBELL'S SOUP CAN with Campbell's and recognize Campbell's as the exclusive source of products and services under this trade dress.

### C.    Campbell's Vigilant Enforcement Of Its Trademark Rights

Given the fame of the CAMPBELL'S SOUP CAN and the public's deep trust in the *Campbell's* brand, it is no surprise that many have sought to falsely associate themselves with Campbell's or to claim Campbell's approval or endorsement. In addition to competing food companies, politicians with the last name "Campbell" have sought to misuse the CAMPBELL'S SOUP CAN to falsely lend their campaigns the legitimacy of a perceived endorsement from one of America's most storied and trusted brands. Campbell's has dedicated considerable resources to protecting its marks and trade dress from such unauthorized, confusing, deceptive, and dilutive uses. (*Id*. ¶¶ 9–11.) Campbell's has consistently

succeeded in safeguarding its brand. In 2024, for instance, Campbell's obtained a judgment permanently enjoining Jane Foodie LLC from selling packaged soups in a can design that imitated the CAMPBELL'S SOUP CAN. *The Campbell's Co. v. Jane Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8; Crook Decl. ¶ 10; Exs. 7, 8. Campbell's has also resisted politicians' misuse of the CAMPBELL'S SOUP CAN to promote their campaigns. (*Id.* ¶ 11.) All of those candidates—save the Defendants in this case—stopped using misleading images that confused the public and/or created a false association with Campbell's. (*Id.*)

### D.   Defendants' Unauthorized Use Of The CAMPBELL'S SOUP CAN

Defendant Shelby Nicole Campbell is a candidate for the United States House of Representatives in Michigan's 13th Congressional District. Defendant Campbell for Congress is her campaign committee.

Campbell's recently discovered that Defendants are using—and intend to continue using—a campaign logo based on and confusingly similar to the CAMPBELL'S SOUP CAN to promote their campaign and raise funds. (*Id.* ¶ 12.) Campbell's has never authorized Defendants to use the CAMPBELL'S SOUP CAN mark and trade dress for their campaign. (*Id.* ¶ 13.)

Defendants' infringing design is virtually identical to the iconic CAMPBELL'S SOUP CAN, and intentionally so. Defendants' design copies the red-and-white color panels, the central medallion, and the layout. Defendants'

6

design also places the word "Campbell" at the top of its can image in a light, italicized script identical to that used by Campbell's. In fact, Defendants' design copied the "Campbell's" logo and simply edited out the apostrophe and the "s." Further, Defendants display capitalized block text immediately beneath the italicized line and feature "Soup for Change 2026" in the lower portion using a font and a color scheme that mimics Campbell's flavor line. (*Id*. ¶¶ 14; Ex. 9.)

| **CAMPBELL'S SOUP CAN** | **Defendants' Campaign Logo** |
|---|---|
|  | |

Defendants deploy this infringing design across social media, including as an X/Twitter banner and a pinned TikTok post. (*Id*. ¶ 15; Exs. 10–13.)

 

Further, Defendants' entire campaign seeks to associate Ms. Campbell with Campbell's: the campaign slogan is "soup4change"; the website is

www.soup4change.com; their X handle is "@soup4change"; their TikTok and

Instagram accounts are "@atasteofsoup"; and they promote hashtags such as

"#vote4soup" or "#soup4change." (*Id*. ¶ 16.) On information and belief,

Defendants have distributed stickers and other merchandise bearing the infringing

design nationwide to promote the campaign. (*Id*. ¶ 17; Ex. 14.)

Defendants do not deny that their design copies the CAMPBELL'S SOUP

CAN. They instead lean into that fact to garner public attention and seek to buoy

Ms. Campbell's candidacy through a non-existent affiliation with and endorsement

from one of America's most celebrated brands.

Defendants have, for instance, published images of Ms. Campbell's

campaign stickers alongside an actual CAMPBELL'S SOUP CAN to emphasize

the false association. (*Id*. ¶ 18; Exs. 15, 17.) Defendants have also misused

Campbell's brand and trade dress to solicit donations, telling potential supporters

they should "help [her] out" because "[w]e know you all love the Campbell's soup

cans[.]" (*Id*. ¶ 19; Ex. 16.)

 

### E.     Defendants' Infringement Has Caused Actual Confusion And Is Likely To Continue To Do So

Defendants' infringing use has generated real-world confusion regarding association, sponsorship, and endorsement. Members of the public have posted on Defendants' and Campbell's social media pages, tagging Campbell's, asking whether Campbell's "endorses" the campaign, and encouraging consumers to "stop buying Campbell soups and associated products[.]"



(*Id.* ¶¶ 20–22; Ex. 17; *see also id.* Ex. 18.)

### F.     Defendants Rebuffed Campbell's Attempts to Amicably Resolve This Matter and Continue Their Infringement Despite Notice and Suit

Prior to filing suit, Campbell's sent Defendants a letter asking them to stop using Campbell's intellectual property and to discard infringing materials. (*Id.* ¶ 23; Ex. 19.) Ms. Campbell responded by posting Campbell's letter on Instagram, contending that the dispute would "make her blow up and really win congress easily." (*Id.* ¶ 24; Ex. 20.) Campbell's filed this action on October 10, 2025.

Despite Campbell's notice and suit, Defendants' infringing materials remain live on their website and social media as of the filing of this Motion. (*Id.* ¶ 25; Exs. 9, 10, 11, 14, 15, 16, 17.) Defendants' responses to Campbell's resolution efforts confirm that Defendants will not cease their infringement, in part because they believe it will help their campaign. Ms. Campbell wrote, for example, that Campbell's should "keep it coming" because she "would love the publicity. Lol[.]" (Declaration of Lily Kim ("Kim Decl.") ¶ 3; Ex. 1.) Defendants have also claimed an intent to *expand* their infringement, stating in a news interview that they "might just 'change [their infringing images from red] to blue[.]'" (Kim Decl. ¶ 4; Ex. 2.)[1]

## **ARGUMENT**

Campbell's is entitled to a preliminary injunction enjoining Defendants' infringement. It is beyond reasonable debate that Defendants' campaign logo is virtually and purposefully identical to the iconic CAMPBELL'S SOUP CAN, that Defendants' misuse of Campbell's mark and trade dress has caused and will continue to cause actual confusion, and that this was Defendants' goal all along. While Defendants are free to run a political campaign, they may not do so by

---

[1] Changing Defendants' infringing design to blue would not stop the infringement but expand it. The CAMPBELL'S SOUP CAN design is not limited to any particular color scheme and includes blue variants. (Crook Decl. ¶ 5; Ex. 4.) Campbell's most recent registered trademark, U.S. Reg. No. 7758888, is not limited to any specific colors. (*Id.* ¶ 5; Ex. 4 (Description of the Mark: "The mark consists of top panel above a bottom panel with a circular design between the two panels" and "color is not claimed as a feature of the mark").)

freeriding on the positive associations, familiarity, and goodwill that the Michigan electorate holds for one of America's most storied and well-loved brands.

## I.   CAMPBELL'S IS ENTITLED TO INJUNCTIVE RELIEF

This Court has discretion to grant or to deny a preliminary injunction. *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 533 (6th Cir. 2024). Courts consider four factors in deciding whether to issue relief: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Each factor favors an injunction here.

### A.   Campbell's Is Likely to Succeed on Its Lanham Act Claims

Campbell's asserts claims for trademark infringement under Section 32 of the Lanham Act and for false designation of origin, false endorsement, and unfair competition under Section 43(a). 15 U.S.C. §§ 1114(1), 1125(a). To prevail on its claims, Campbell's must show: "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause

confusion." *Libertarian Nat'l Comm.*, 116 F.4th at 534 (citing 15 U.S.C. §

1114(1)); *see also, e.g.*, *Champions Golf Club, Inc. v. The Champions Golf Club,*

*Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) ("[T]he same factors are considered under

section 1125(a) as are considered under section 1114.") (quotation omitted).[2]

Campbell's is likely to succeed on every element of its claims. *See, e.g.*, *PGP, LLC*

*v. TPII, LLC*, 734 F. App'x 330, 332 (6th Cir. 2018) (explaining that the likelihood

of success factor "is often decisive" in trademark actions).

### 1.   Campbell's Owns Valid Trademark and Trade Dress

There is no dispute that the marks Campbell's asserts here are valid and

enforceable. Defendants have never contended otherwise. Nor could they,

particularly as the majority of the marks at issue achieved incontestable status

decades ago. (*See* Crook Decl. ¶ 4; Ex. 3; *see also* 15 U.S.C. § 1065.) Such status

serves as "conclusive evidence of the validity of the registered mark[.]" 15 U.S.C.

§ 1115(b); *see also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d

410, 417 (6th Cir. 2012) ("[O]ne way to show a mark's validity is through its

'incontestability.'"). At least one court has entered a final judgment protecting

many of these trademarks in another trademark case. *Campbell's Co. v. Jane*

---

[2] That said, Section 43 of the Lanham Act is textually broader in scope, prohibiting the use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin," 15 U.S.C. § 1125(a), while Section 32 prohibits only the use of "a registered mark." 15 U.S.C. § 1114(1).

*Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8.

> **2.  Defendants Used the Infringing Design in Commerce in Connection with Services**

Sections 32 and 43(a) of the Lanham Act require that the defendant's use occur "in commerce" and "in connection with the . . . distribution, or advertising of goods or services." 15 U.S.C. §§ 1114(1), 1125(a). "[U]se in commerce" is not limited to "profit-making activity[.]" *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 92–93 (2d Cir. 1997). Rather, as the Sixth Circuit recently explained, "[c]ourts have long construed the Lanham Act's requirement that a defendant use a trademark in connection with the advertisement of 'any goods or services' to encompass trademark infringement by political or nonprofit defendants." *Libertarian Nat'l Comm.*, 116 F.4th at 537; *accord, e.g.*, *Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588, 594 (D. Md. 2014) ("Courts have interpreted the term 'services' to include political activities."); *Radiance Found., Inc. v. NAACP*, 25 F. Supp. 3d 865, 878 (E.D. Va. 2014) ("'Services' are defined as 'a wide variety of non-commercial public and civic benefits,' including donation solicitation, event hosting, information dissemination and campaigning.").

Defendants' use satisfies this standard. They operate a campaign website and associated social media accounts, distribute political advertisements, and solicit contributions using the infringing design. The Sixth Circuit held just last year that

defendants "unquestionably render a service" within the meaning of the Lanham Act when they "operate a website, promulgate political news and party activities, . . . endorse candidates, and solicit donations" using a plaintiff's mark. *Libertarian Nat'l Comm.*, 116 F.4th at 536. Courts in other jurisdictions agree. In *Hershey*, for example, the District of Maryland held a campaign's use of Hershey's trade dress to "promote a political candidate, disseminate political information, host campaign events, and solicit donations" qualifies as use "in connection with services." 33 F. Supp. 3d at 594. This Court should reach the same conclusion.

### 3.    Defendants' Infringing Design Is Likely To Cause Confusion

"The general concept underlying the likelihood of confusion is that the public believe that the [mark or dress] owner sponsored or otherwise approved the use of the trademark or trade dress." *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 851 (6th Cir. 2023) (quotation omitted); *accord, e.g.*, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205(2d Cir. 1979) ("The public's belief that the mark's owner sponsored or otherwise approved of the use of the trademark satisfies the confusion requirement."); *Hershey*, 33 F. Supp. 3d at 594 ("[T]he confusion requirement also encompasses confusion with respect to sponsorship or affiliation."). Courts weigh eight factors in evaluating likelihood of confusion: "(1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the

marketing channels used, (6) the likely degree of purchaser care, (7) the intent of

the defendant in selecting the mark, and (8) the likelihood of expansion of the

product lines." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499,

509 (6th Cir. 2023). The evidence overwhelmingly demonstrates that Defendants'

conduct is likely to confuse the public unless enjoined.

### a.      Campbell's Asserted Marks are Undeniably Strong

To evaluate the strength factor, this Court "focuses on the distinctiveness of

a mark and its recognition among the public." *Maker's Mark Distillery, Inc. v.

Diageo N. Am., Inc*., 679 F.3d 410, 419 (6th Cir. 2012) (citation omitted). "[A]

mark is strong if it is highly distinctive, *i.e.,* if the public readily accepts it as the

hallmark of a particular source; it can become so because it is unique, because it

has been the subject of wide and intensive advertisement, or because of a

combination of both." *Id.* (citation omitted).  An incontestable mark is

"presumptively strong." *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 600

(6th Cir. 1991).

Here, there can be no doubt as to the overwhelming strength (indeed, fame)

of the CAMPBELL'S SOUP CAN trademark and trade dress. Campbell's has used

the registered marks for over a century, and many of them are incontestable. (*See*

Crook Decl. ¶¶ 3–4, Ex. 3 (Campbell's trademark registrations).) Campbell's has

expended substantial efforts and sums of money to advertise and promote its

product and business under this trade dress, including in advertising online, social media, and print media. (*Id.* ¶¶ 6–7.) As a result, the CAMPBELL'S SOUP CAN has become extremely well-known and famous among consumers. *Campbell's* is the #1 trusted soup brand in the United States and enjoys a nearly 100% awareness score among consumers. (*Id.* ¶ 8; Exs. 6, 21, 22.) At least one federal court has already entered a judgment recognizing that the CAMPBELL'S SOUP CAN is famous. *Jane Foodie*, No. 1:24-cv-10973 (D.N.J. Dec. 23, 2024), ECF Nos. 7, 8. (Crook Decl. ¶ 10; Exs. 7, 8.)

        **b.**    **Defendants' Infringing Mark is Nearly Indistinguishable from Campbell's Soup Can Design**

In evaluating similarity, "courts must view marks in their entirety and focus on their overall impressions, not individual features." *Daddy's Junky Music Stores*, 109 F.3d at 283. Similarity is "a factor of considerable weight." *Daddy's Junky Music Stores*, 109 F.3d at 283. The similarity between Defendants' infringing design and the CAMPBELL'S SOUP CAN is overwhelming, obvious, and intentional. (*See, supra,* p. 7.)

*Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588 (D. Md. 2014), is directly on point. There, political candidate Steve Hershey used a campaign logo modeled after the Hershey's candy bar trade dress. *Id.* at 590. The court granted a preliminary injunction, holding that "[o]n the basis of the substantially similar campaign design, a member of the public could easily—and mistakenly—believe

that Senator Hershey is in some way affiliated with Hershey." *Id.* at 594. The same holds true here: the substantial similarity of Defendants' design to the CAMPBELL'S SOUP CAN is likely to mislead voters to believe Campbell's is affiliated with or endorses Defendants' campaign. This factor thus weighs heavily in favor of enjoining Defendants' use.

### c.   Defendants Intentionally Infringe Campbell's Marks To Create A False Association in Voters' Minds

When a defendant adopts a mark "with the intent of deriving benefit" from the renown and "reputation of [the plaintiff], ***that fact alone*** may be sufficient to justify the inference that there is confusing similarity." *Audi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006) (citation omitted) (emphasis added); *see also AWGI, LLC v. Atlas Trucking Company, LLC*, 998 F.3d 258, 268 (6th Cir. 2021) (affirming finding of likely confusion).

Here, Defendants do not try to hide their intent to benefit from the goodwill and positive association that the public has with the Campbell's brand. Not only do Defendants use an actual Campbell's soup can in campaign promotional materials, they ask the public to support the campaign without reference to any policy positions, or plans, solely *because* of their "love [of the Campbell's soup can[.]"




17

(*See, supra*, p. 9; Crook Decl. ¶¶ 18–19; Exs. 15–17.)

### d. The Public Is Actually Confused

There is also ample evidence of actual confusion, which is "undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores*, 109 F.3d at 284 (citation omitted); *see also Colors+ v. Colors+ Counseling, LLC*, 782 F. Supp. 3d 579, 626 (N.D. Ohio 2025). Campbell's has received numerous direct and social media inquiries asking whether it endorses Defendants. (Crook Decl. ¶¶ 20-22.) Consumers have tagged Campbell's corporate accounts on social media, asking about the perceived relationship between Campbell's and Defendants, as shown in the example below:



(*Id*. ¶ 20; Ex. 17.) Numerous consumers have sent inquiries to Campbell's, reporting that Defendants are "using [Campbell's] logo in her campaign" and demanding clarification about whether Campbell's "endorse[s] her[.]" (*Id*. ¶¶ 21–22; Ex. 18.)  Confusion is thus not a mere possibility; it is a continuing reality.

### e.     The Remaining Factors Favor Campbell's

The remaining factors also support a finding of likely confusion. Both Campbell's and Defendants heavily rely on the same online and social media marketing channels. (*Id.* ¶¶ 6–7; Ex. 5.) This substantial overlap in audience and medium heighten the risk of confusion. *Hydrojug, Inc. v. Five Below, Inc.*, 625 F. Supp. 3d 684, 709 (N.D. Ohio 2022) (explaining that marketing channel factor considers whether "both parties use the internet as a substantial marketing channel" and whether these channels "share some overlap").

Defendants also will likely expand the use of the infringing design as their campaign continues through the 2026 election. Indeed, Defendants have stated their intent to continue and even expand their infringement, suggesting that they "might just 'change [their design] to blue[.]" (Kim Decl. ¶ 4; Ex. 2.) Campbell's registrations cover that color scheme as well. Registration No. 7758888, for example, protects a mark "consist[ing] of top panel above a bottom panel with a circular design between the two panels" and "color is not claimed as a feature of the mark. (Crook Decl. ¶¶ 4–5; Ex. 3; *see also* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 7:39 (5th ed.) ("A mark not limited to one color in effect covers the mark as it appears in any color."). Introduction of another infringing design would only worsen public confusion and resulting harm to Campbell's.

Finally, neither the relatedness of the goods or services nor the likely degree

of purchaser care dispels the likelihood of confusion. This is not a situation where the parties operate in entirely distinct spaces with non-overlapping audiences. To the contrary, Campbell's and Defendants both target ordinary, everyday Michiganders. The CAMPBELL'S SOUP CAN is instantly recognized by consumers nationwide, including in Michigan, where the voters targeted by Defendants reside. Critically, given their substantial actual and continuing confusion to date, it is unlikely that voters who visit one of Defendants' online campaign platforms would readily distinguish (and not fall prey to the false association) between Campbell's and Defendants' political campaign exploiting the CAMPBELL'S SOUP CAN under the taglines or hashtags "soup4change", "atasteofsoup", or "vote4soup".

### B.    The First Amendment Does Not Protect Defendants' Infringement

Defendants have claimed in a recent Motion to Dismiss that their use of Campbell's marks and trade dress is a parody protected by the First Amendment. Defendants are incorrect, including because "trademark law generally prevails over the First Amendment" where, as here, the infringer users another's trademark for "'source identification.'" *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 159 (2023) (citation omitted); *Libertarian Nat'l Comm.*, 116 F.4th at 536 (no First Amendment defense "where a defendant uses the trademark as a source identifier"). This well-settled rule applies to political candidates too: "When a

defendant uses another entity's mark as part of a communicative message, it is entitled to First Amendment protection. **However, that protection does not apply when the trademark is used to associate a political candidate with a popular consumer brand**." *Hershey*, 33 F. Supp. 3d at 594–95 (citations omitted) (emphasis added).

Here, Defendants are not using the CAMPBELL'S SOUP CAN for any expressive or communicative purpose. Rather, they are using it to "associate a political candidate with a popular consumer brand," *i.e.*, as a source identifier. *Hershey*, 33 F. Supp. 3d at 595 (rejecting a similar First Amendment defense). The CAMPBELL'S SOUP CAN bears no substantive connection to the content or message of Defendants' campaign. Defendants are simply using Campbell's famous and iconic design—which embodies the goodwill of the Company and its brand which Campbell's has spent over a century building—to suggest an affiliation between their campaign and Campbell's when none exists. (*See, e.g.*, Crook Decl. ¶ 18; Exs. 15, 17).)

## II.   CAMPBELL'S WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

"In trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013); *PGP*, 734 F. App'x at 332 ("If the movant is likely to succeed on an infringement

claim, irreparable injury is ordinarily presumed, and the public interest will usually favor injunctive relief.").

Even without the "presumption" arising from Campbell's likelihood of success on the merits, the evidence makes plain that Campbell's will suffer irreparable harm absent injunction. Defendants have spurned Campbell's efforts at amicable resolution, explicitly because Ms. Campbell "would love the publicity" and believes the dispute will "help her blow up and really win Congress easily." (Crook Decl. ¶ 24; Ex. 20.) Defendants' infringing materials remain live on their website and social media profiles as of the filing of this Motion. (*Id*. ¶ 25; Exs. 9, 10, 11, 14, 15, 16, 17.) Consumers are already questioning whether Campbell's has endorsed Defendants and even encouraged others to "stop buying Campbell soups[.]" (CrookDecl. ¶ 20; Ex. 17.) These harms to Campbell's goodwill and brand reputation are ongoing, irreparable, and likely to increase in scope. Defendants claim they may expand their misconduct to include additional infringing designs. (Kim Decl. Ex. 4.) Even absent any expansion, voters will pay more attention to political candidates and messaging as the 2026 election nears.

## III.   A PRELIMINARY INJUNCTION WILL NOT HARM OTHERS

The third factor examines whether an injunction would cause substantial harm to Defendants or to others. *See Rhinehart v. Scutt*, 509 F. App'x 510, 515 (6th Cir. 2013). An injunction in this case will not harm Defendants in any

cognizable way. *See Hershey*, 33 F. Supp. 3d at 596 ("Any harm that the Defendants may suffer will have been self-inflicted.") (citation omitted); *see also Hydrojug, Inc. v. Five Below, Inc.*, 625 F.Supp.3d 684, 717 (N.D. Ohio 2022) (same). Relief will not restrict Defendants' political speech or candidacy; it would bar Defendants only from suggesting a false association with and endorsement from Campbell's. Defendants will remain free to campaign under any other, non-infringing design and have ample time to adopt non-infringing materials. *See Hershey*, 33 F. Supp. 3d at 595–96 ("The general election is still almost four months away, providing the Defendants with sufficient time to distribute non-infringing campaign materials.").[3] Nor would issuing relief harm the public or any other third party.  This factor thus weighs in favor of injunction as well.

## IV.   THE PUBLIC INTEREST FAVORS PRELIMINARY INJUNCTION

Finally, the public interest strongly supports "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods,*

---

[3] For these reasons, the Court should exercise its discretion to issue a preliminary injunction without requiring a bond. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Here, Defendants have "no legitimate interest in the continued use" of the infringing marks, so there is no reason for a bond under Rule 65. *See TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225, 1235 (MD. Fla. 2013) (granting preliminary without bond where defendants had "no legitimate interest in the continued use of the [infringing] marks"); *Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.*, 2008 WL 5384077, at *9 (E.D. Mich. Dec. 23, 2008) (strength of likelihood of success obviated need for bond).

*Inc.*, 453 F.3d 377, 383 (6th Cir. 2006) (citation omitted); *Hydrojug*, 625

F.Supp.3d at 717 (granting preliminary injunction and observing "the general

public is a key beneficiary of the federal trademark system" which protects against

confusion that would harm public). This interest is especially acute in the political

context: "[t]he public has a strong interest in not being misled about whether

Senator Hershey's campaign is affiliated with or sponsored in some way by the

Hershey Company." *Hershey Co.*, 33 F. Supp. 3d at 596.  So too here.

## CONCLUSION

For all the foregoing reasons, Campbell's respectfully requests that the Court

grant its Motion for a Preliminary Injunction and issue the relief forth the

accompanying [Proposed] Order.

Dated: November 3, 2025                    Respectfully submitted,


                                           */s/ Leah R. Imbrogno*
                                           Leah R. Imbrogno (P79384)
                                           FOLEY & LARDNER LLP
                                           500 Woodward Avenue, Suite 2700
                                           Detroit, Michigan 48226
                                           Telephone: (313) 234-7100
                                           LImbrogno@foley.com

                                           Andrew Levine
                                           Lily (Haeun) Kim
                                           BRAUNHAGEY & BORDEN LLP
                                           200 Madison Ave, 23rd Floor
                                           New York, NY 10016
                                           Telephone: (646) 829-9403

levine@braunhagey.com
kim@braunhagey.com

*Attorneys for Plaintiffs The Campbell's Company and CSC Brands LP*

25

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and CSC
BRANDS LP,

               Plaintiffs,

      v.

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,

             Defendants.

Case No: 2:25-cv-13213-JEL-DRG

Hon. Judith E. Levy

Magistrate Judge David R. Grand

## [PROPOSED] ORDER GRANTING PLAINTIFFS THE CAMPBELL'S COMPANY AND CSC BRANDS LP'S MOTION FOR PRELIMINARY INJUNCTION

This matter having come before the Court on Plaintiffs The Campbell's Co.'s and CSC Brands LP's Motion for Preliminary Injunction (ECF No. _), the Court, having reviewed all papers filed in connection therewith and being fully advised in the premises, finds as follows:

Plaintiffs are likely to succeed on the merits of their Lanham Act claims. Plaintiffs own valid trademarks and trade dress. Defendants' design, which was used in commerce in connection with services of political campaign activities, is confusingly similar to Plaintiffs' trademarks and trade dress, has already caused actual consumer confusion, and is likely to continue to do so unless enjoined.

Plaintiffs have also demonstrated that they will suffer irreparable harm absent relief. Defendants' ongoing infringement harms Plaintiffs' goodwill and reputation by misleading the public into believing that Plaintiffs have sponsored, endorsed, authorized, or are otherwise affiliated with Defendants.

The balance of harms favors issuance of an injunction. The relief sought merely prohibits Defendants from using the infringing design and/or otherwise misleading the public into believing Plaintiffs are associated with, sponsor, support, or endorse Defendants.  Injunctive relief will neither restrict nor impair Defendants' ability to engage in campaign activities that do not misuse Plaintiffs' trademarks and trade dress or falsely suggest or imply some relationship between Plaintiffs and Defendants.

The public interest in preventing the misuse of trademarks and trade dress to confuse or mislead the public, particularly in connection with a political campaign, weighs in favor of relief.

No bond is required in connection with this Order.

**WHEREFORE, IT IS HEREBY ORDERED** that

1.      Plaintiffs' motion is **GRANTED;**

2.      Defendants are preliminarily enjoined from:

> **a.** Using the CAMPBELL'S SOUP CAN mark or trade dress or any other mark or trade dress that is confusingly similar thereto; and

**b.** Otherwise falsely suggesting that Campbell's has sponsored, endorsed, authorized or otherwise is affiliated or associated with Defendants;

3. Within five days of this Order, Defendants shall remove and cause to be removed all images, videos, or other content from their campaign website, social media accounts, hashtags, and/or other public-facing materials (including without limitation stickers, posters, and flyers) featuring any logo or design that uses the CAMPBELL'S SOUP CAN mark or trade dress or that uses any other design, mark, or trade dress that is confusingly similar thereto;

4. [Within five days of this Order, Defendants shall remove and cause to be removed from their campaign website, social media accounts and posts, hashtags, and any other public-facing materials (e.g., stickers, posters, and flyers) any and all content using the term "soup" in any manner in connection with Defendants' campaign that the public may construe or understand to suggest or imply any endorsement by or affiliation or association with Campbell's;]

***OR ALTERNATIVELY,***

[If Defendants choose to continue using the term "soup" on any online platform or content and/or other public-facing materials (e.g., stickers, flyers, posters, etc.), whether by continuing to display or distribute existing content or materials or by displaying or distributing any new content or materials, Defendants

shall include and cause to be included on all online platforms, social media profiles and posts, and all other public-facing materials utilizing the term "soup" a prominent and conspicuous disclaimer stating: "**Please note that I am not endorsed by, or in any way connected with, The Campbell's Company or any of its brands, products, subsidiaries, or affiliates.**"]

5.      Defendants shall immediately cease and cause to be ceased all sale, distribution, or dissemination of any merchandise or other campaign materials, including stickers or other items, bearing any logo design that uses the CAMPBELL'S SOUP CAN mark or trade dress or that uses any other design, mark, or trade dress that is confusingly similar thereto; and

6.      Within five days of this Order, Defendants shall destroy and cause to be destroyed any remaining inventory of such merchandise or campaign materials.


        **IT IS SO ORDERED.**


Dated: _____, 2025

                                        _____
                                        Hon. Judith E. Levy
                                        United States District Court Judge