UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and
CSC BRANDS LP,

Case No: 2:25-cv-13213-JEL DRG

        Plaintiffs

Hon. Judith E. Levy

  v.

Magistrate Judge David R. Grand,

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,
        Defendants.

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

Defendant Shelby Nicole Campbell and "Campbell for Congress" (together, "Defendants"), appearing *pro se*, respectfully oppose Plaintiffs' Motion for Preliminary Injunction. "Campbell for Congress" is not a corporation or separate legal entity. It is the Federal Election Commission–registered campaign committee of Defendant Shelby Nicole Campbell, who is the sole individual operating under that name. The committee has no legal existence apart from Ms. Campbell and is not required to appear through counsel. Accordingly, all references to "Defendants" herein refer to Ms. Campbell individually and to her campaign name interchangeably.

Plaintiffs seek an extraordinary order that would effectively silence a grassroots congressional campaign by prohibiting a candidate from using her own surname and long-standing nickname, "Soup," in political expression. They portray rampant consumer confusion and brand damage, yet the record shows that Defendants ceased all arguably similar "soup can" imagery months ago after Plaintiffs first contacted Ms. Campbell.

Ms. Campbell has been openly critical—not supportive—of Campbell's Soup Company. She has publicly and repeatedly stated that she would never seek or accept the company's endorsement and has vowed to hold it accountable if elected to Congress. The online controversy surrounding her was driven by politically motivated doxxing and hostility toward her views, not by any legitimate consumer belief that Campbell's had endorsed her campaign.

Now, despite these facts, Plaintiffs ask this Court to impose a perpetual disclaimer requirement on Ms. Campbell's use of her own name and nickname in political speech. This is not a traditional trademark dispute over counterfeit goods—it is an attempt by a powerful corporation to suppress political commentary and artistic expression by a pro se candidate with fewer than $900 in campaign donations.

Under Federal Rule of Civil Procedure 65 and controlling Sixth Circuit and First Amendment precedent, Plaintiffs have not met—and cannot meet—their heavy burden to justify a preliminary injunction. The motion should therefore be denied.

Pursuant to Local Rule 7.1(a), Defendant Shelby Nicole Campbell states that she reached out to Plaintiffs' counsel regarding the relief requested in this filing. On November 6, 2025, Plaintiffs' counsel responded by email and did not concur in the relief sought. Accordingly, this opposition is being filed without concurrence.

## II.   FACTUAL BACKGROUND

Defendant Shelby Nicole Campbell ("Defendant") is an individual candidate for the United States House of Representatives in Michigan's 13th Congressional District. She is a single mother and a grassroots candidate operating without corporate funding, paid staff, or formal campaign infrastructure. Her campaign name, "Campbell for Congress," refers solely to herself; no separate legal entity exists. To date, her campaign has received fewer than $900 **in** total donations.

Defendant has been known by the nickname "Soup" since at least 2011. Her long-standing online identity includes usernames and email addresses such as *shelbysoup*, *shelbysoup1*, and *soupbitchbaddd*—identifiers used consistently for more than a decade across social-media, academic, and professional platforms including LSAC and PACER. This nickname long predates her campaign and bears no connection to Plaintiffs' commercial soup products.

In August 2025, Defendant briefly used an AI-generated image of a soup can on a single batch of roughly 300 stickers bearing the slogan "Soup4Change." The image was created through ChatGPT as political artwork, not a commercial logo or product label. It was never mass-produced or sold for profit. After Plaintiffs contacted Defendant alleging infringement, she immediately stopped producing or distributing the design and has not used it in

any campaign materials since. The image remains only in limited, non-commercial contexts—such as a photograph used as her computer background or in older social-media posts.

Following Plaintiffs' contact, Defendant made numerous public statements on social-media and professional platforms rejecting any connection to Campbell's Soup Company ("Campbell's"). She publicly stated that she "would never want Campbell's to endorse [her] because they are a horrible corporation," criticized Campbell's for its environmental and labor practices, and pledged to hold the company accountable if elected. Plaintiffs themselves quoted one such statement— "Big mama's [getting sued again, bring it]"—which plainly shows adversarial, not affiliative, intent.

On or about September 26, 2025, after Defendant made unrelated political comments online, she was doxxed by individuals hostile to her views. Those individuals posted her private information, mocked her nickname, and tagged Campbell's on social media urging the company to "take all her money" and "destroy her." Many sent threats toward Defendant and her family. These attacks were political in nature and unrelated to any belief that Campbell's endorsed her.

Despite Defendant's prompt compliance and public disavowals, Plaintiffs filed this lawsuit and now seek a preliminary injunction that would impose

sweeping restrictions on her political speech. Specifically, they ask this Court to bar Defendant from using her own surname or nickname "Soup" without attaching a permanent disclaimer written by Plaintiffs.

There is no evidence that any consumer has been misled into believing Campbell's endorses Defendant's campaign or that Campbell's has suffered any decline in goodwill, reputation, or sales. Campbell's products remain widely available nationwide.

This litigation does not arise from genuine trademark confusion but from corporate overreach—a billion-dollar company attempting to silence a grassroots congressional candidate for engaging in humor, commentary, and art that reflect her personal identity and political message. Defendant's limited and discontinued use of "Soup" and "Campbell" is rooted in personal history, satire, and political expression protected by the **First Amendment**.

## III.   LEGAL STANDARD

In the Sixth Circuit, a preliminary injunction is an extraordinary remedy that should be granted only upon a clear showing that the movant is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Supreme Court has repeatedly

emphasized that such relief is "never awarded as of right" and must be reserved for truly exceptional circumstances. *Winter*, 555 U.S. at 24.

To obtain a preliminary injunction, the plaintiff bears the heavy burden of proving all four of the following factors: (1) a strong likelihood of success on the merits; (2) a substantial threat of irreparable harm absent injunctive relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that the public interest would be served by the injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012); *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 533 (6th Cir. 2024). These factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

However, failure to establish the first two factors — likelihood of success and irreparable harm — is "typically fatal" to a request for preliminary injunctive relief. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *Bays*, 668 F.3d at 818. Courts in this Circuit exercise "sound judicial discretion" when weighing these factors and have made clear that "a preliminary injunction should be granted only if the movant carries the burden of persuasion by a clear showing." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d

566, 573 (6th Cir. 2002); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir.

2005.

This standard reflects the principle that injunctions should preserve the status quo**,** not grant one side the relief it seeks before trial. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). Thus, to justify the sweeping injunction requested here, Plaintiffs must not only show that their legal theory is likely to prevail, but also that they face real, immediate, and irreparable harm that monetary damages cannot remedy. They cannot make either showing.

## IV.   ARGUMENT

## A.   Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits

The Plaintiffs' claims fail for the same reasons stated in Defendant's pending Motion to Dismiss under Rule 12(b)(6). Even if taken as true, the allegations in Plaintiffs' Complaint do not establish trademark infringement or false association under the Lanham Act.

### 1. Defendant's use is political and expressive, not commercial.

The Lanham Act is designed to prevent consumer confusion in commercial markets—not to regulate core political expression or

commentary. Courts have consistently held that where speech is non-commercial, expressive, or parody, trademark law must yield to First Amendment protections. *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) (use of "taubmansucks.com" was constitutionally protected criticism, not trademark infringement). *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) (nonprofit and political uses are not "in commerce" merely because they seek donations). *ProtectMarriage.com – Yes on 8 v. Courage Campaign*, 680 F. Supp. 2d 1225 (E.D. Cal. 2010) (political parody of a campaign logo protected under the First Amendment).

Defendant's limited, past use of the phrase "Soup4Change" and an AI-generated can image was political commentary on her own campaign and the state of American politics—not an attempt to sell soup or mislead consumers. Plaintiffs have not identified a single instance of confusion prior to the public doxxing of Defendant, and those online attacks were political in nature, not evidence of trademark confusion.

2. Defendant's conduct is clearly parody and criticism protected by the First Amendment.

Courts have repeatedly recognized that parodic or critical use of a mark—particularly in political contexts—does not create a likelihood of confusion. *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 495 (2d Cir. 1989) ("The keystone of parody is imitation for humorous or critical effect."). *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) (trademark claims must yield to expressive works unless explicitly misleading). *Taubman Co.*, supra (trademark law cannot suppress critical commentary websites).

Defendant's campaign posts, videos, and public statements explicitly criticize Campbell's, mocking its corporate conduct and environmental record. Plaintiffs' own exhibits quote Defendant saying, "Big mama's [getting sued again, bring it.]" No reasonable person would interpret that as an endorsement relationship.

3. Use of one's own name and nickname cannot reasonably be prohibited.

Defendant's surname "Campbell" and nickname "Soup" are part of her identity and have been used for over a decade online. Courts construe such uses narrowly and balance trademark rights against the individual's right to identify themselves. *Taylor Wine Co. v. Bully Hill Vineyards*, 569 F.2d 731 (2d Cir. 1978) (defendant could use his own name with proper

context). *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424 (6th Cir. 2016) (when a mark is someone's surname, courts must narrowly tailor injunctions to allow fair use of one's own name).

Plaintiffs' demand for a perpetual disclaimer on any use of the word "Soup" or "Campbell" would amount to unconstitutional compelled speech. *Wooley v. Maynard*, 430 U.S. 705 (1977) (state cannot compel citizens to display government messages). *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781 (1988) (mandated disclaimers in advocacy contexts burden free speech). Plaintiffs cannot show a likelihood of success where Defendant's speech is political, critical, and centered on her identity—not a product.

4. Plaintiffs' Evidence of "Actual Confusion" Is Inadmissible Hearsay and Lacks Probative Value

Plaintiffs rely heavily on alleged emails, phone calls, and declarations from corporate employees summarizing statements purportedly made by members of the public who asked whether Campbell's Soup Company endorsed Defendant's campaign. These materials are inadmissible hearsay under Federal Rules of Evidence 801(c) and 802, because they are out-of-court statements offered to prove the truth of the matter asserted—that consumers were actually confused about any alleged endorsement.

The so-called "evidence" described in Plaintiffs' declaration is also double hearsay: the declarant is recounting what unidentified third parties allegedly said. Courts routinely hold that such anecdotal statements are inadmissible and entitled to little or no weight. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 635 (6th Cir. 2002) (isolated instances of confusion carry little weight); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (unsworn customer emails were inadmissible hearsay); *Citizens Banking Corp. v. Citizens Fin. Grp.*, 320 F. App'x 341, 347 (6th Cir. 2009) (few calls or emails insufficient to show meaningful confusion).

Even if these statements were considered, they occurred only after Defendant was doxxed and publicly targeted by political opponents, undermining any inference of genuine consumer confusion. The emails and calls reflect political hostility and social-media controversy, not marketplace misunderstanding. Because Plaintiffs' "confusion" evidence is hearsay and unreliable, it cannot establish a likelihood of success on the merits or justify extraordinary injunctive relief.

**B.     Plaintiffs Have Not Shown Irreparable Harm**

Under the Trademark Modernization Act, irreparable harm is presumed only where the plaintiff demonstrates a likelihood of success on the merits—which they

have not. Even absent the presumption, Plaintiffs must show real, non-speculative harm. Defendant has ceased all use of any alleged "infringing" merchandise for months. There is no evidence of lost goodwill, sales, or consumer confusion. Online criticism directed at Defendant demonstrates public understanding that Campbell's and Defendant are *opponents*, not partners.

A corporation's dislike of being criticized or parodied is not "irreparable harm." *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003). The Lanham Act "does not prohibit an individual from expressing [their] opinion about a company," and courts have repeatedly rejected attempts by powerful brands to use trademark law to shield themselves from public scrutiny or satire.

That principle applies squarely here. Campbell's seeks to weaponize trademark law not to prevent consumer confusion, but to silence a political candidate who criticized its business practices, environmental impact, and corporate influence. Plaintiffs are not suffering harm from mistaken endorsement—they are simply uncomfortable being publicly challenged. Their alleged "injury" is the natural consequence of open debate, protected political speech, and public accountability.

The First Amendment does not permit billion-dollar corporations to transform embarrassment or negative publicity into a claim of "irreparable harm."

See *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (rejecting trademark claim over the "Barbie Girl" song, noting that "the parties are advised to chill"). As in *Taubman*, "the First Amendment protects [Defendant's] right to express [her] opinion," even when that expression draws public attention or discomfort. Plaintiffs' real grievance is not misuse of a trademark—it is that Defendant refused to cower or stay silent. That is not irreparable harm; it is democracy functioning as intended.

## C.     The Balance of Equities Favors Defendant

The equities in this case overwhelmingly favor Defendant. Plaintiffs are a billion-dollar corporation with a century-old brand, an international marketing team, and extensive legal resources. Defendant, by contrast, is a single-mother congressional candidate appearing *pro se* with fewer than $900 in campaign donations. The burden of this litigation alone far exceeds any hypothetical injury claimed by Plaintiffs.

Courts consistently deny injunctive relief where the hardship to the defendant's constitutional rights outweighs a plaintiff's speculative commercial concerns. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) (economic convenience cannot justify suppressing expression); *Cheff v. Life*

*Magazine*, 329 F.2d 429 (6th Cir. 1964) (free-speech interests outweigh minor business inconvenience).

Here, Plaintiffs face no genuine threat of harm: their global reputation remains intact, and Defendant has already ceased the challenged use. The only "harm" they claim is the discomfort of being criticized by a private citizen. By contrast, the harm to Defendant from an injunction would be immediate and severe — silencing her campaign, restricting her identity, and chilling her ability to engage in political expression.

Equity does not permit a corporation to leverage its wealth and legal power to silence dissent. Should the Court consider any limited injunction, Rule 65(c) requires Plaintiffs to post a substantial bond sufficient to protect Defendant from the costs and damages of a wrongful injunction.

## D. The Public Interest Strongly Favors Protecting Political Speech

The public has a profound interest in open political discourse, satire, and artistic expression — not in expanding corporate control over language and imagery that form part of American culture. The Supreme Court has repeatedly held that trademark law must not be used to suppress disfavored

viewpoints. *Matal v. Tam*, 582 U.S. 218 (2017); *Iancu v. Brunetti*, 588 U.S. 388 (2019).

This case illustrates why granting Campbell's the sweeping relief it seeks would signal that corporations may invoke trademark law to punish citizens who reference or parody them during political debate. Such a precedent would chill participation in elections and deter candidates, artists, and activists from engaging in creative political speech. The First Amendment exists precisely to prevent that result.

Courts have long recognized that "the marketplace of ideas" depends on protecting even unpopular or uncomfortable speech. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Defendant's campaign commentary and use of her own name are part of that marketplace. The public interest therefore lies not in insulating a multinational corporation from criticism, but in preserving the right of individuals—particularly political candidates—to speak freely without fear of corporate reprisal.

## V. REQUEST FOR RELIEF

For the reasons set forth above, Defendant respectfully requests that this Honorable Court deny Plaintiffs' Motion for Preliminary Injunction in its entirety. In the alternative, if any form of injunctive relief is granted, Defendant asks that the Court require Plaintiffs to post a substantial bond pursuant to Federal Rule of Civil Procedure 65(c), sufficient to protect Defendant from damages resulting from any wrongful injunction. Defendant further requests that the Court preserve her right to a jury trial and decline to consolidate this hearing with a trial on the merits under Rule 65(a)(2).

Defendant also expressly reserves the right to seek damages, including punitive damages and other relief as may be warranted by Plaintiffs' conduct in bringing and pursuing this action.

Respectfully submitted,

/s/ Shelby Nicole Campbell
Pro Se Defendant
8100 E Jefferson Ave.
Detroit, MI 48214
Shelbysoup@gmail.com
11/6/2025

CERTIFICATE OF SERVICE

I certify that on November 6, 2025, I served a copy of the foregoing document by email to Plaintiffs' counsel of record.

/s/ Shelby Nicole Campbell
Pro Se Defendant
shelbysoup@gmail.com