UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE CAMPBELL'S COMPANY and
CSC BRANDS LP,

Case No: 2:25-cv-13213-JEL DRG

      Plaintiffs

Hon. Judith E. Levy

  v.

Magistrate Judge David R. Grand,

SHELBY NICOLE CAMPBELL and
CAMPBELL FOR CONGRESS,
      Defendants.

---

DEFENDANTS RULE 12(b)(6) MOTION TO DISMISS

Defendants Shelby Nicole Campbell and Campbell for Congress (collectively, "Defendants") respectfully move this Court to dismiss Plaintiffs' Complaint in *Campbell's Company et al. v. Campbell et al.*, Case No. 2:25-cv-13213-JEL-DRG, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As set forth below, the Complaint fails to allege a plausible claim of trademark infringement, false designation of origin, or false endorsement. Defendants' alleged use of "Soup4Change" and related imagery was not a commercial "use in commerce" within the meaning of the Lanham Act, there is no likelihood of consumer confusion or false endorsement, and the First Amendment fully protects Defendants' expressive political speech and parody.   Plaintiffs' own allegations and the indisputable facts show that Ms. Campbell – a congressional candidate

1

nicknamed "Soup" since infancy – used the term "soup" and her surname in a non-profit, political context, consistently disclaimed any affiliation with Campbell's, and derived no commercial benefit. Accordingly, the Complaint does not state a claim to relief that is plausible on its face and should be dismissed. Pursuant to Local Rule 7.1(a), Defendants states that she reached out to Plaintiffs' counsel regarding the relief requested in this filing. On the morning of November 6, 2025, Plaintiffs' counsel responded by email and did not concur in the relief sought.

ISSUES PRESENTED

1. Whether the Complaint fails to state a claim for trademark infringement or false endorsement under the Lanham Act when Defendants' use of "Soup4Change" and a soup-can-themed design was noncommercial political expression, unconnected to any sale of goods or services, accompanied by clear disclaimers of affiliation, and therefore not a "use in commerce" likely to cause consumer confusion?

2. Whether the First Amendment and trademark fair-use doctrines bar Plaintiffs' claims, given that Defendants' use of "Soup4Change" and a satirical soup-can image constitutes protected political speech and parody?

3. Whether Plaintiffs' reliance on out-of-circuit cases such as *Campbell Soup Co*. v. *Jane Foodie* and United *We Stand America, Inc*. v. *United We Stand, America N.Y., Inc.,* 128 F.3d 86 (2d Cir. 1997), is misplaced where those cases involved materially different facts and therefore provide no controlling precedent under Sixth Circuit law?

4.  Whether the claims against "Campbell for Congress" should be dismissed or treated as claims against Ms. Campbell individually, where "Campbell for Congress" is not a corporation or separate juridical entity but merely Ms. Campbell's FEC-registered campaign designation, and therefore may appear pro se under 28 U.S.C. § 1654.

## SHORT ANSWERS

1. Yes. Plaintiff fails to state a claim under 15 U.S.C. §§ 1114(1)(a), 1125(a) because Defendants' use of "Soup4Change" was noncommercial political expression, not a "use in commerce," and cannot cause consumer confusion.

2. Yes. The claims are barred by the First Amendment and 15 U.S.C. § 1125(c)(3)(A)(ii) since the use was protected parody and political speech, not commercial trademark use.

3. Yes. Plaintiffs' cited cases are non-binding and factually distinct, involving commercial competitors and identical names, unlike Defendants' expressive, noncommercial use under Sixth Circuit law.

4. Yes. "Campbell for Congress" is not a separate legal person but Ms. Campbell's campaign name and alter ego. Under 28 U.S.C. § 1654 and cases such as *United States v. Hagerman*, 545 F.3d 579 (7th Cir. 2008), Ms. Campbell may appear pro se because the real party in interest is the individual herself, not an artificial entity.

## STATEMENT OF FACTS

1.     Defendant Shelby Nicole Campbell is a young political candidate from Detroit, Michigan, who has been affectionately known by the nickname "Soup" for nearly her entire life. The nickname originated during her infancy and became a long-standing family moniker.

2.     Following her parents' divorce, Ms. Campbell's mother proudly embraced the nickname's legacy—so much so that she obtained a personalized Illinois license plate reading "EX SOUP 1" in 1997.



3.     The nickname "Soup" has therefore been a part of Ms. Campbell's identity and family history for decades, wholly unrelated to any corporate branding by Campbell Soup Company. Indeed, Ms. Campbell's great-great-grandfather, William Campbell, was born in 1895—two years before Campbell's Soup was established as a commercial brand.

4.     In July 2025, Ms. Campbell announced her candidacy for the United States House of Representatives in Michigan's 13th Congressional District. Embracing her nickname, she coined the slogan "Soup4Change," a playful and symbolic phrase reflecting her campaign's themes of community care and political reform.

5.     To accompany this slogan, Ms. Campbell created a lighthearted design using an AI art generator—an artistic, satirical image combining a soup-can motif with political messaging and the phrase "Soup for Change."

8.     The design was used exclusively on a small batch of approximately 300 stickers produced early in the campaign. These stickers were distributed to supporters and volunteers, often for free or for optional donations marked "appreciated but not expected."

9.     No additional batches were printed, and no goods or merchandise were sold for profit. Ms. Campbell's campaign never sold soup or any other tangible products using the "Soup4Change" logo.

10.     On September 2, 2025, Campbell Soup Company ("Plaintiffs") emailed Ms. Campbell a cease-and-desist letter alleging trademark and trade dress infringement.

10.     Ms. Campbell promptly complied and ceased any further production of the "Soup4Change" stickers. For several weeks thereafter, there was no contact or action from Plaintiffs.

11.     On September 25, 2025, Ms. Campbell became the target of a severe online "doxxing" and harassment campaign after a public comment drew viral attention on social media.

12.     Strangers—some claiming to be Campbell's supporters and others likely internet trolls—circulated her personal information and posted hostile and defamatory remarks online.

6

13.    Only after this online harassment erupted did Plaintiffs file this lawsuit, on or about October 10, 2025.

14.    In their Complaint, Plaintiffs cite several of those same social media posts and emails as supposed "evidence" of consumer confusion. These online comments were not genuine customer inquiries but sarcastic or hostile remarks reacting to the viral controversy.

15.    Some individuals accused Ms. Campbell of "stealing" Campbell's logo or running a "scam," despite her full compliance with the cease-and-desist and the complete absence of commercial activity. Such biased, harassing posts cannot constitute evidence of actual consumer confusion under the Lanham Act.

16.    Following the filing, Plaintiffs' counsel presented Ms. Campbell with a proposed stipulated judgment that would have permanently restricted her from using the word "Soup" in any political or personal context and would have been entered as a judgment "in Plaintiffs' favor."

17.    Ms. Campbell declined to sign that version because it falsely implied she had infringed Plaintiffs' marks and would prevent her from using her own nickname indefinitely.

18.    Instead, she redrafted and signed her own proposed agreement, agreeing not to reproduce the "Soup4Change" sticker but expressly denying infringement and maintaining her right to use the nickname "Soup."

19.    Plaintiffs did not accept her proposed version and proceeded with the litigation.

21.    Throughout this entire period, Ms. Campbell consistently and publicly disclaimed any affiliation with Campbell Soup Company.

22.    On multiple social media platforms, she stated that "Campbell's would never endorse me" and clarified that her "Soup4Change" theme arose from her nickname and political message—not from any corporate partnership.

23.    She made light of the situation at times, posting humorously about being a small grassroots candidate facing a billion-dollar corporation, underscoring that she was not aligned with Campbell's in any way.

24.    In sum, the undisputed facts show that Ms. Campbell's use of the term "Soup4Change" was a limited, noncommercial, and expressive form of political speech rooted in her lifelong nickname and family identity.

25.    She produced a single batch of stickers, made no sales, immediately complied with Plaintiffs' cease-and-desist, and repeatedly disclaimed any corporate affiliation.

26.    Plaintiffs' decision to pursue federal litigation over this expressive, noncommercial use—based largely on hostile online commentary—fails to establish any plausible claim of trademark infringement, false endorsement, or consumer confusion under the Lanham Act.

Legal Standard for Rule 12(b)(6)

27.     To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

28.     While the Court must accept well-pleaded factual allegations as true, it need not accept a plaintiff's legal conclusions or unwarranted inferences. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must "permit the court to infer more than the mere possibility of misconduct." *Id.*; *Iqbal*, 556 U.S. at 679.

29.     In evaluating trademark-based claims, a court may consider not only the elements pleaded but also whether, given judicially noticeable facts—such as the nature of the mark's use—the complaint crosses the plausibility threshold. If the complaint lacks an essential element of the claim or relies on implausible inferences (for example, alleging confusion where the context clearly dispels it), dismissal is warranted.

## ARGUMENT

**I. The Lanham Act Does Not Apply Because Defendants Did Not Use the Mark "In Commerce" for Goods or Services**

30.    The Lanham Act requires "use in commerce" as an essential element of every federal trademark claim. Both trademark infringement under 15 USC § 1114 and false designation of origin under § 1125(a) apply only when a defendant uses a mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services."

31.    In other words, the Lanham Act targets commercial trademark use—conduct involving a commercial transaction or intended to influence consumer purchasing decisions. *See Taubman Co v Webfeats*, 319 F3d 770, 775 (6th Cir 2003).

32.    The facts alleged by Plaintiffs do not meet that requirement. The challenged use of "Soup4Change" was political campaign speech, not a source-identifying mark for goods or services. Ms. Campbell was running for Congress, not selling soup, shirts, or any product branded "Soup4Change."

33.    The only tangible items—a limited run of stickers—were campaign novelties given to supporters, not merchandise in commerce. There was no price tag; donations were voluntary, and none were exchanged for the stickers. Such use is comparable to handing out free yard signs or bumper stickers—an exercise of political speech and association, not a commercial enterprise.

34.   The Sixth Circuit and other courts have made clear that the Lanham Act does not extend to noncommercial uses of marks unconnected to goods or services. *Taubman*, 319 F3d at 775. In that case, involving a noncommercial gripe website, the court explained: "If [the defendant's] use is commercial, then, and only then, do we analyze his use for a likelihood of confusion."

35.   Indeed, the core purpose of trademark law is to protect consumers in a commercial marketplace, not to police political commentary. As one court observed, the "use in commerce" requirement "reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause." *United We Stand America Inc v United We Stand America New York Inc*, 128 F3d 86, 92 (2d Cir 1997). Even under that broad interpretation, there must be use of a mark as a brand or source identifier for goods or services. Ms. Campbell's campaign use falls far outside that scenario.

36.   Plaintiffs implicitly concede the noncommercial nature of Defendants' actions by relying on a "false endorsement" theory rather than product confusion. But even a false endorsement claim under § 1125(a)(1)(A) requires use of a mark in connection with goods, services, or commercial activity. Campaign fundraising is not commercial trade; political donations are contributions to support speech.

37.   Plaintiffs cite *Hershey Co v Friends of Steve Hershey*, 33 F Supp 3d 588 (D Md 2014), but that case is distinguishable. There, the court enjoined a political campaign that had copied the Hershey's candy-bar trade dress almost exactly and

sold fundraising merchandise using that design. *Id* at 597–600. Because the campaign tied its use of the mark to commercial fundraising, the court treated it as "use in commerce." By contrast, Ms. Campbell's campaign neither sold goods nor solicited donations tied to any product, and her use was limited, expressive, and accompanied by explicit disclaimers. Moreover, *Hershey* is a Maryland district-court decision outside this Circuit, and the Sixth Circuit construes "use in commerce" far more narrowly, limiting it to genuine marketplace activity. *See Taubman Co v Webfeats*, 319 F3d 770, 775 (6th Cir 2003). Accordingly, *Hershey* offers no persuasive basis for extending trademark law into the political realm here.

38.    Courts have drawn this same line. *See Bosley Medical Institute Inc v Kremer*, 403 F3d 672, 679 (9th Cir 2005) (noncommercial website not actionable under the Lanham Act because no goods or services were offered). *Cf United We Stand America*, 128 F3d at 90–92 (finding commercial use only where a breakaway group used the identical mark to solicit donations).

39.    Here, by contrast, Ms. Campbell is not using "Campbell's" as a mark at all—she is using the word "Soup" (a generic term) and her own name "Campbell" in a political slogan. She is not calling her campaign "Campbell's Soup PAC" or otherwise appropriating Plaintiffs' branding.

40.    To the extent Plaintiffs argue that use of a soup-can image or the word "Soup" on social media constitutes "use in commerce," that argument stretches the

Lanham Act beyond its limits. Posting political content online does not transform core political expression into commercial activity.

41.    As both the Supreme Court and the Sixth Circuit have cautioned, courts must not allow trademark law to "stray into suppressing protected expression." Applying the Lanham Act to penalize Ms. Campbell's political messaging would do exactly that.

42.    In sum, no "use in commerce" exists. Defendants did not use Plaintiffs' marks in the sale or advertising of goods or services—they used a parody of Plaintiffs' imagery during a political campaign. This alone warrants dismissal of the Lanham Act claims under Rule 12(b)(6). *See* 15 USC §§ 1114(1)(a), 1125(a)(1); *Taubman*, 319 F3d at 774–75.

## B.    No Likelihood of Confusion or False Endorsement: The Context Shows Consumers Would Not Be Misled

43.    Even assuming arguendo that Defendants' actions were "commercial," the Lanham Act claims still fail because Plaintiffs cannot plausibly establish a likelihood of consumer confusion or false endorsement. Trademark law protects against confusion about "source, sponsorship, affiliation, or approval." *KP Permanent Make-Up Inc* v. *Lasting Impression I Inc*, 543 US 111, 117 (2004).

44.    Plaintiffs sell soup and food products. Defendants are "selling" a political candidate to voters. These are entirely distinct arenas with different audiences and purposes. A voter encountering "Soup4Change" on a campaign website or sticker

would view it as a political slogan—not as an advertisement for soup. The relatedness of goods or services and marketing channels factors weigh heavily against confusion. *Frisch's Restaurants Inc* v. *Elby's Big Boy of Steubenville Inc*, 670 F2d 642, 648 (6th Cir 1982).

45.     Defendants explicitly disclaimed any corporate affiliation, repeatedly stating that "Campbell's would never endorse me." Clear disclaimers substantially reduce any risk of confusion. *Homeowners Group Inc* v. *Home Marketing Specialists Inc,* 931 F2d 1100, 1111 (6th Cir 1991). A few curious or joking social-media comments do not constitute actual confusion by a meaningful segment of consumers. *Therma-Scan Inc* v. *Thermoscan Inc,* 295 F3d 623, 635 (6th Cir 2002).

46.     Intent likewise weighs against confusion. Ms. Campbell used her own surname and her lifelong nickname "Soup." Good-faith use of one's own name is not evidence of bad intent. *Taylor Wine Co* v. *Bully Hill Vineyards Inc*, 569 F2d 731, 734 (2d Cir 1978). Nothing indicates that Defendants sought to trade on Campbell's goodwill; the "Soup4Change" slogan signals personal identity and commentary, not sponsorship.

47.     The campaign's design is also an obvious parody. As the Fourth Circuit explained, a successful parody "communicates simultaneously that it is not the famous mark, but is only satirizing it." *Louis Vuitton Malletier SA* v *Haute Diggity Dog LLC*, 507 F3d 252, 260–61 (4th Cir 2007). The use of the soup-can motif and

wordplay highlights differences, not similarity, and no reasonable consumer would believe Campbell Soup Company now endorses a congressional candidate.

48. Given the unrelated markets, explicit disclaimers, good-faith intent, lack of actual confusion, and parodic context, Plaintiffs have not plausibly alleged that an appreciable number of ordinary consumers would be confused. The conclusory allegation of "likely confusion" cannot overcome the contrary context. *Bell Atlantic Corp* v. *Twombly*, 550 US 544, 555, 570 (2007); *Ashcroft* v *Iqbal*, 556 US 662, 678 (2009). The infringement and false endorsement claim therefore fail as a matter of law.

## C. Defendants' Use Is Protected Political and Parodic Speech Under the First Amendment

49. The First Amendment independently bars Plaintiffs' attempt to use trademark law to silence political and artistic expression. Political expression and parody lie at the core of constitutional protection. *Rosenblatt* v. *Baer,* 383 US 75, 85 (1966).

50. Courts balance trademark rights against free expression under the Rogers test, which protects the use of a mark in expressive work if (1) the use has artistic relevance and (2) it is not explicitly misleading. *Rogers* v. *Grimaldi*, 875 F2d 994, 999 (2d Cir 1989). The Sixth Circuit applies comparable reasoning in protecting expressive and parodic uses. *ETW Corp* v. *Jireh Publishing Inc,* 332 F3d 915, 926–

28 (6th Cir 2003) (artwork depicting Tiger Woods protected); *Taubman Co* v. *Webfeats*, 319 F3d 770, 777–79 (6th Cir 2003) (parody website protected).

51.    The Campbell's imagery plainly has artistic relevance to Ms. Campbell's nickname "Soup" and her reform message, while her disclaimers ensure the use is not explicitly misleading. The use easily satisfies *Rogers* and Sixth Circuit precedent.

52.    Other courts have reached the same conclusion when defendants used famous marks for parody or commentary. *Mattel Inc* v *MCA Records Inc*, 296 F3d 894, 902 (9th Cir 2002) (song "Barbie Girl" was protected social commentary); *Haute Diggity Dog*, 507 F3d at 260–61 (parody reduces confusion). The Supreme Court recently reaffirmed that genuine parodies not used as source identifiers remain shielded. Jack *Daniel's Properties Inc* v *VIP Products LLC*, 599 US 140, 154–59 (2023).

53.    Congress itself codified protection for parody and commentary: the fair-use provision of the Lanham Act exempts "[a]ny fair use … including use in connection with … parodying." 15 USC § 1125(c)(3). Courts have likewise held political parodies protected. *MasterCard International Inc* v. *Nader 2000 Primary Committee Inc*, No 00 Civ 6068, 2004 WL 434404, at 11 (SDNY Mar 8 2004) (dismissing trademark claims over "Priceless" parody).

54.     Because Defendants' use is noncommercial, expressive, and parodic—and not explicitly misleading—the First Amendment precludes Plaintiffs' Lanham Act claims. *ETW Corp*, 332 F3d at 926–28; *Taubman*, 319 F3d at 777–79.

**D. Plaintiffs' Out-of-Circuit Authorities Are Distinguishable and Nonbinding**

55.     Plaintiffs rely on *Campbell Soup Co* v. *Jane Foodie LLC*, No 1:24-cv-10973 (DNJ Dec 23 2024), and *United We Stand America Inc* v *United We Stand America New York Inc*, 128 F3d 86 (2d Cir 1997). Neither supports their claims.

56.     *Jane Foodie* involved a direct commercial competitor selling look-alike soup and sauces—an ordinary marketplace confusion case. Ms. Campbell, by contrast, sells no goods; her use was political commentary. The decision is factually inapposite and not precedential in this Circuit.

57.     *United We Stand* addressed a rogue organization using the identical mark of Ross Perot's national group to solicit donations, causing actual donor confusion. 128 F3d at 90–92. Here there is no identical mark, no competing organization, and no evidence of confusion. Moreover, Second Circuit precedent is not binding in the Sixth Circuit, which grants strong protection to expressive, non-commercial uses. *Taubman,* 319 F3d at 777–79; ETW Corp, 332 F3d at 926–28.

58.     Accordingly, Plaintiffs' reliance on those cases is misplaced. Evaluated under Sixth Circuit law and the facts alleged, the Complaint fails to state any plausible claim under the Lanham Act and must be dismissed under Rule 12(b)(6).

**E. "Campbell for Congress" Is Not a Separate Juridical Entity Requiring Counsel, and the Claims Against It Should Be Dismissed or Treated as Claims Against Ms. Campbell Individually**

59.     Plaintiffs rely on *Rowland v. California Men's Colony*, 506 U.S. 194 (1993), and similar district-court rulings such as *Detroit Battery Co. v. Walby*, No. 4:23-11178, 2023 WL 11985249 (E.D. Mich. Sept. 27, 2023), to suggest that "Campbell for Congress" must appear through licensed counsel. Those cases involved true artificial entities—corporations, partnerships, or member-based associations—that exist independently of any single individual. The courts' concern in those situations is that a non-lawyer might improperly represent the rights of others. That concern does not exist here.

60.     "Campbell for Congress" is not a corporation, LLC, or separate legal person under Michigan or federal law. It is a Federal Election Commission–registered campaign committee under 11 C.F.R. § 101.1(a), serving as the required reporting vehicle for Ms. Campbell's candidacy. The committee has no legal personality apart from Ms. Campbell, no officers or members, and no independent assets or governance structure. It functions as a sole, unincorporated political committee— essentially Ms. Campbell operating under a registered name.

61.     Under 28 U.S.C. § 1654, "[i]n all courts of the United States, the parties may plead and conduct their own cases personally or by counsel." Nothing in that statute restricts pro se appearance to "natural persons" or excludes individuals who

operate under a trade name or political-committee designation. Because Ms. Campbell is the real party in interest and the only person whose rights are implicated, she is entitled to conduct her defense personally.

62.     Federal courts recognize that when there is no legal separation between an individual and the name under which they operate, the individual may appear *pro se*. In *United States v. Hagerman*, 545 F.3d 579 (7th Cir. 2008), the court reaffirmed that entities such as limited-liability companies must be represented by counsel because they are legally distinct from their owners and benefit from limited liability. The opinion contrasted those entities with sole proprietorships, noting that "a sole proprietorship has no legal identity separate from the individual who owns it," and thus "the real party in interest is the individual." Similarly, in *Lowery v. Hoffman*, 188 F.R.D. 651 (M.D. Ala. 1999), the court allowed a pro se defendant to represent an unincorporated sole proprietorship, emphasizing that no other person's rights were implicated. And in *Lattanzio v. COMTA*, 481 F.3d 137 (2d Cir. 2007), the Second Circuit held that limited-liability companies and other artificial entities must appear through counsel precisely because they possess a separate legal identity independent of their owners. Together, these decisions help clarify the blurry line between when counsel is required and when an individual may represent themselves—showing that the rule applies only to entities with a separate existence from the individual, not to personal or sole-owner operations such as an unincorporated campaign committee.

63.     Accordingly, the Court should (a) dismiss the claims against *Campbell for Congress* as a non-suable entity under Rule 12(b)(6), or (b) clarify that any such claims are duplicative of those against Ms. Campbell individually, who may appear and defend herself *pro se* pursuant to 28 U.S.C. § 1654. Requiring separate counsel in this circumstance would improperly extend *Rowland v. California Men's Colony*, 506 U.S. 194 (1993), beyond its rationale, deny Ms. Campbell meaningful access to the courts based on form rather than substance, and chill the ability of grassroots political candidates to defend their own campaigns against well-funded corporate plaintiffs.

CONCLUSION

.      Plaintiffs are attempting to transform a lighthearted political pun and personal nickname into federal trademark litigation, but their Complaint does not meet the standards of Rule 12(b)(6). Defendants' use of "Soup4Change" was not in commerce and not likely to confuse or mislead anyone—it was an expressive, noncommercial use fully protected by the First Amendment. Accepting all well-pled facts as true, Plaintiffs still have not stated a plausible claim for relief under the Lanham Act.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendants respectfully request that this Honorable Court grant this

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss the

Complaint in its entirety with prejudice, and award such other and further relief as the

Court deems just and proper.

Respectfully submitted,

*Defendants Shelby Nicole Campbell
and Campbell for Congress*

8100 E Jefferson Ave
Apt 805A
Detroit, MI 48214
Shelbysoup@gmail.com
3139093152